O'Keefe *v.* Kellogg.

DANIEL O'KEEFE, Appellant, *v.* EZRA B. KELLOGG, Appellee.

APPEAL FROM PEORIA.

A court has the right to order the whole or a part of a verdict to be entered of record, *nunc pro tunc*, and enter a judgment upon it, during the term, even where the clerk has omitted that duty for some days.

The jury may find, in replevin, that one part of the property belonged to the plaintiff, and another part to the defendant.

The owner of personal property cannot sell his right or title in it to another, while such property is in the actual adverse possession of a third party who claims it.

In the sale of personal property, where any thing remains to be done to complete the contract, such as ascertaining quantity, or delivering possession, the title does not pass till the contract is thus completed.

JUDGMENT was rendered by PETERS, Judge, at November term, 1853, of the Peoria Circuit Court, in favor of Kellogg, for return of the wheat in the declaration mentioned, and his costs, and in favor of O'Keefe for one cent damages and his costs. O'Keefe prayed this appeal.

N. H. PURPLE, for appellant.

J. MANNING and MERRIMAN, for appellee.

This was an action of replevin commenced by appellant against the appellee for 600 bushels of Indian corn, and 500 bushels of wheat.

Declaration contained two counts: For an unlawful taking, and for an unlawful detention.

Pleas, not guilty of unlawful taking; not guilty of unlawful detention; property in defendant Kellogg.

On the trial plaintiff read in evidence the following agreements: "The terms of the following agreement between E. B. Kellogg of the first part, and George Myers of the second part, are as follows, to wit: Ezra B. Kellogg has sold his span of horses to George Myers for one hundred and sixty dollars, ($160,) his wheat for sixty-five cents per bushel, his corn for twenty-five cents per bushel, and his oats for fifteen cents per bushel. From the afore-mentioned wheat and corn the party of the second part reserved 50 bushels of corn and 50 bushels of wheat for his family, and is to allow the party of the first part for the corn and wheat what he himself receives. The within contract thus

expressed is to annul what is said in their contract of February 24th, concerning the partial purchase of wheat, corn, and oats.

" All the payment for the above-named horses, carriage, wagon, harness, and grain (in the granary) is to be made by the 1st of June, 1852, and the undersigned parties do mutually bind themselves, their heirs and executors, to the full and faithful discharge of the above contract, under the penalty of one thousand dollars for the non-fulfilment thereof; no part of this agreement shall be changed unless by the mutual consent of both the respective parties. In testimony whereof, we have hereunto set our hands and seals this 27th day of February, 1852.                                    E. B. KELLOGG.
                                          GEORGE MYERS."

Plaintiff next read the following contract: " Know all men by these presents, that I, George Myers, of Woodford county, have this day sold unto Daniel O'Keefe, of Peoria, Illinois, all my wheat in my barn, on the premises purchased by me of E. B. Kellogg, of said county of Woodford, supposed to be about 500 bushels, also all the corn in said barn, supposed to be about 600 bushels, being all the wheat and corn on said premises, except 50 bushels of each reserved by said Kellogg in my purchase of him. Said wheat and corn to be delivered upon the premises to said O'Keefe or his order, the wheat at sixty and corn at fifteen cents per bushel. The amount of my indebtedness to said O'Keefe of $112, and John B. Warner $25, Dobbins & Co. $36, Mr. Bensel $7, Mr. Mounts $4, Purple & Sanger $10, assumed by said O'Keefe, to be deducted from the purchase-money of said grain, and the balance due to be paid on the delivery of the said corn and wheat at the price aforesaid.          GEORGE MYERS.
   May 10th, 1852."

Plaintiff next read the writ of replevin and return. Wheat replevied, 371½ bushels ; corn replevied, 414½ bushels.

Plaintiff then called James McCoy, who testified (the contract with Myers and Kellogg having been shown him) that he had seen the contract before; that Myers purchased a farm of Kellogg and took possession of it, and the barn where the corn was, and used out of the corn and oats; had rented out the farm ; Kellogg reserved the house till 1st of June, 1852; Myers boarded with Kellogg; witness lived there also ; oats and wheat, and 475 bushels of corn in granary; left there about the 1st of April ; Kellogg reserved use of horses for Sabbath days; did not use them as his own ; witness and his brother, at request of parties, made an estimate of amount of corn and oats; Myers

was to take them at our estimate; this same day contract was made.

Alexander McCoy, called by plaintiff, stated that he and his brother estimated the corn and oats; put up the corn and most of the oats; Myers was to take them at their estimate; Myers took control of the grain; some grain replevied; the threshers were to estimate the wheat; I left with James McCoy; after contract, Myers claimed the grain as his; Kellogg used horses Sunday; Myers hired men and fed them; never saw Kellogg exercise any acts of ownership over the property after the trade.

Defendant called a witness, his daughter, who remembered when contract was made; Myers then resided at our house; boarded there; left about March or April; father nailed up the granary about a week before Myers left; don't remember date; Myers came in an hour or two after, very angry; went off to other house on the farm occupied by tenant; horses still on farm; Myers one time took wheat away when father was from home; when he came·back he took him to task about it; that Myers took the grain off on Sunday when my father was away; he allowed he had no right to take it away, and promised not to do so again; father had heard reports that Myers had been selling or trying to sell the property; Myers said he had no intention of selling it; father said to him, there is a definite understanding that this property is not to be sold (by Myers) till it is paid for; and Myers said it was so; this not more than two weeks before Myers left; there were two nearly similar conversations between them; my father said there was a distinct understanding and agreement that none of the property should be removed till they were paid for, and Myers admitted that such was their understanding and agreement between them; cannot recollect the day of any of these conversations; think it might have been in May, &c.; first conversation perhaps three weeks before Myers left; other a week after the first; I was there when the grain was replevied; father kept possession of property from the time he nailed up the granary till it was replevied; Myers left about a week before grain was replevied; was present when the written contract was made; know of no other contract; father said to Myers, it is our contract that you shall not have the property till it is paid for; Myers assented; hired men of Myers took care of horses; fed out of the grain; Myers sold the horses; father compromised with purchaser and got them back.

Several instructions were given at defendant's request. Those objected to are the following: —

1. If the facts so warrant it, the jury can find property in the

wheat in the defendant in this suit, and property in the corn in the plaintiff.

3. If the jury believe from the evidence, that at the time of the execution of the bill of sale by Myers to O'Keefe, Kellogg was in possession of the property in controversy, claiming title thereto, such bill of sale conveys no title, unless it is shown by the evidence that Kellogg had no right to the possession.

4. If by the terms of a contract of sale of personal property, any thing remains to be done by the parties, as in case of grain the quantity is yet to be ascertained; the sale is not consummated, until the amount of such grain is ascertained and delivery is made.

5. A contract for the sale of personal property is an entirety, and the whole must be taken together, and if the jury believe from the evidence that under the contract of sale between Kellogg and Myers any thing remained to be done after the execution of such contract, such as the adjustment of the amount of any portion of the grain specified in said bill of sale, such bill of sale passes no title, until such subsequent act is done.

The jury returned a verdict as follows : " We, the jury, find the ownership of the Indian corn in the plaintiff, and the ownership of the wheat in the defendant. D. Bristol, Foreman."

The court stated to the jury that the verdict was not in form, and inquired if they intended to find the defendant guilty as to the corn, and not guilty as to the wheat; they said they did. The court stated that the jury should find damages, and they might find nominal damages of one cent, and the jury assented thereto, and the court made the following minute upon its docket: " Verdict, guilty as to the corn in declaration mentioned, and not guilty as to the wheat, and damages one cent;" which was the only entry made by the court or clerk of any verdict in said cause at that time.

The plaintiff entered a motion for a new trial. 1. Because verdict was against law. 2. Because verdict was against evidence. 3. Because the court gave improper instructions asked by defendant. 4. Because the verdict is not responsive to the issues. 5. Because plaintiff has discovered new and important testimony since the trial.

The verdict of the jury was rendered on the 14th December, 1853. On the 17th December, 1853, the court, on motion of defendant, made the following order : " And now it being made to appear to the said court that the verdict returned by the jury in said cause in these words, ' We, the jury, find the ownership of the Indian corn in the plaintiff, and the ownership of the wheat in the defendant, D. Bristol, Foreman,' still remains

among the papers in said cause, but has not been filed or recorded by the clerk of said court, it is ordered that the same be filed by the said clerk, *nunc pro tunc*, and be by him recorded to constitute a part of the finding of the jury in said cause, and that judgment be rendered upon the same, together with that part of the verdict of said jury given upon the suggestion of the court, in the words and figures following, ' Verdict, guilty as to the corn in declaration mentioned, and not guilty as to the wheat, and damages one cent,' as constituting the finding of the jury in said cause when taken and considered together."

Plaintiff excepted to said order.

Caton, J. We see no objection to the course pursued by the court in recording the verdict of the jury. When the jury returned their verdict, it was observed by the court that it only determined one of the issues submitted to them; and on the suggestion of the court the verdict was so amended as to decide the other issues, and only this latter part of the verdict was entered upon the record at the term; the paper which was returned by the jury which contained their verdict on the other issue not being filed at the time by the clerk, but remaining among the papers in the cause. Three days after, when the motion for a new trial was argued, this omission was discovered, and the court ordered that part of the verdict be recorded *nunc pro tunc*, and then rendered judgment upon the whole verdict. Had this portion of the verdict been recorded at the time it was rendered, and when the other part of the verdict was recorded, no objection could have been alleged. It was a part of the verdict of the jury, and as such by them declared to the court, and whether it was actually entered of record one moment or another, could make no difference. Had the clerk omitted for three days to enter any part of the verdict, the court would have had the right to direct him to enter the entire verdict at that time. It is, probably, not uncommon for clerks to omit to enter verdicts at the moment they are received; and it is the duty of the court to see that the rights of suitors are not prejudiced by such omission. Here there was no alteration of the verdict after the jury had separated, but the actual entry of their verdict truly, as they had rendered it in open court; and in this the court did not err.

The remaining errors to be considered are upon exceptions taken to the giving of instructions for the defendant.

The first instruction is, that the jury could find a part of the property replevied to belong to the plaintiff, and a part to the defendant. To this there can be no objection. No complaint

is made of the second instruction.    The third instruction asserts the principle, that the real owner of personal property cannot sell his right or title in it to another while it is in the actual adverse possession of one who claims title to it.    This court held such to be the law in the case of McGoon *v.* Ankeny, 11 Ill. 558.    That decision was made upon satisfactory authority, and as none have been found to the contrary, we must still adhere to it, and this case is a fair illustration of the reason of the rule.    That reason is, that it is against the policy of the law to allow a party to buy a lawsuit, — a mere right of action, — in attempting to purchase personal property.    This litigation is the fruit of this purchase, so far as the wheat is concerned, which the jury have found was in the possession of the defendant, who was claiming title to it.    The instruction was right.

The fourth instruction is as follows: " If, by the terms of the contract of sale of personal property, any thing remains to be done by the parties, as in case of grain, where the quantity is yet to be ascertained, the sale is not consummated until the amount of such grain is ascertained and delivery is made." With the construction assumed on the argument, this instruction would be erroneous.    Where any thing remains to be done to complete the contract, such as ascertaining the quantity and the delivery of possession, the title does not pass till the contract is thus completed, while the title may pass when the contract is completed, although something may remain to be done under the contract in order to ascertain the amount to be paid by the purchaser.    In such a case, if the possession is delivered under the contract, and such is the intention of the parties, the title may pass although the quantity is subsequently to be ascertained.    In this instruction, when fairly understood, the court told the jury, that if by the contract of sale the quantity of grain was still to be ascertained and the possession was still to be delivered, the title did not pass until those acts were done, and such we understand to be the law.

By the fifth instruction the jury were told that the contract for the sale of the personal property was an entirety, and must all be taken together, and that no title passed if any thing remained to be done under the contract, such as the adjustment of the amount of grain specified in the bill of sale.    I cannot say that this instruction stated the law as it is, although possession might have been delivered, and although it may have been the intention of the parties that the title should pass, yet the jury were told that if any portion was, by the terms of the contract, to be subsequently ascertained, no title whatever passed. The parties certainly had a right to make an agreement and to

do acts which would pass the title, leaving the quantity to be subsequently determined. Should I sell a quantity of grain in a warehouse to be shipped to Chicago by the purchaser, the quantity to be there determined, no doubt the title would pass so soon as the grain should be put on board the purchaser's boat, although the quantity was still to be ascertained. Many cases may be put where the title would undoubtedly pass, when not only the quantity, but even the quality or price of the article purchased is left open, by the terms of the contract, for future determination. Again, this instruction actually tells the jury, that if the quantity of any portion of the grain was not determined, the bill of sale conveyed no title whatever till the amount of all the grain was ascertained. In other words, although the quantity of the corn was ascertained, yet no title even to that passed, if the quantity of wheat was still to be determined. But, as it is clear by the verdict of the jury, who found that the title to the corn did pass, and that the title to the wheat did not pass, that they did not so understand the instruction, this objection might possibly be got over if the instruction were otherwise unexceptionable. For the error which we find in this instruction alone, the judgment must be reversed, and the cause remanded.

*Judgment reversed.*