Borden & Selleck Co. v. Fraser & Chalmers.

---

# Borden & Selleck Company v. Fraser & Chalmers.

## Gen. No. 11,628.

1. WARRANTY—*when not implied.* There is no implied warranty as to quality by a vendor who is not a manufacturer.

2. ACCEPTANCE—*what evidence of, of machinery.* The continued use of machinery for a period of two years is evidence of the acceptance thereof.

3. SET-OFF—*what not proper subject of.* An amount paid by the defendant for the repair of a machine purchased from the plaintiff cannot be set off against the plaintiff in an action for the purchase price where such work was done pursuant to an agreement between the defendant and the manufacturer of such machine who had supplied it to the plaintiff for delivery to the defendant.

4. INTEREST—*what unreasonable and vexatious delay to justify.* Unreasonable and vexatious delay of payment such as will justify the allowance of interest appears as to an amount in suit which both prior and subsequent to suit was conceded to be due and was withheld merely to force a settlement of the amount disputed.

5. INTEREST—*when account stated.* Where a portion of a claim had been conceded by the defendant, such portion is deemed to have been stated and interest is allowable thereon.

Action of assumpsit.  Error to the Circuit Court of Cook County; the Hon. EDWARD O. BROWN, Judge, presiding.  Heard in the Branch Appellate Court at the March term, 1904.  Reversed and judgment here. Opinion filed April 18, 1905.

Statement by the Court.  Plaintiff in error sued to recover a balance of account for machinery sold to the defendant.  The amount claimed was $2,656.52, from which defendant claims to be entitled to deductions by way of offset amounting in all to $551.55.  In a letter dated April 4, 1900, defendant enclosed a check for the balance of $2,104.97, with the proviso that it should be accepted "in full settlement of your various charges to us March 1, 1900."  Plaintiff declined to accept the check on those terms.

The machinery over which the controversy arose was ordered in writing.  August 16, 1899, defendant wrote enclosing an order for a Corliss engine, "to be complete in every way."  The next day the plaintiff wrote accepting the order saying, "We will write the Murray Iron Works to-day so that they will fully understand it, and we think they will appreciate the order," etc.  In this letter reference is made to a "copy of our regular specifications," and it is said, "The specifications are the same for this engine as submitted for the one of August 9."  These specifications are not in evidence.

Defendant ordered the engine for sale to a mining company in New Mexico, although its destination was not, so far as appears, known to plaintiff at that time.  After the engine was delivered, the mining company telegraphed to defendant for a new fly-wheel, stating that the first fly-wheel was defective; and afterwards wrote that the mining

company's machinists were working on it, and while not able to make a perfect wheel, might be able to make it run until such time as the new wheel should arrive. In response to that telegram defendant ordered from plaintiff a new fly-wheel December 20, 1899. It is claimed on the part of defendant that the order for this second wheel was made by it upon the condition that if the claim of the mining company proved correct the plaintiff would be held responsible for the alleged defect in the first wheel. The second wheel was duly furnished. It is claimed by defendant that it proved to have the same defect as the first wheel, and that this was corrected by defendant itself at an expense of $41.50. This is one of the contested items in defendant's claim for an offset. In the latter's letter of April 9, 1900, containing the check for $2,104.97, which was refused by plaintiff "in full settlement," occurs this statement: "You are probably aware that this second wheel when received by us was not in proper condition for us to send out, it having some defects, as we complained of in the first instance; that this matter was then taken up with the Murray Iron Works who sent one of their engineers to our shops and he found the condition of affairs was as stated by us, and authorized us to go ahead and put the wheel in shape, and that his company would stand the expense thereof."

Whether there was in fact any such material defect in the first fly-wheel as the mining company claimed, is a controverted matter. It appears that whether defective or not the mining company continued to use it to operate its mill without interruption after the second fly-wheel arrived, and there is no evidence tending to show that the second wheel was ever substituted for the one complained of during the nearly two years in which the mill continued in operation. The mill was shut down in November, 1901. One of the defendant's engineers testifies that he saw the wheel in operation making about 75 revolutions a minute, that it was not stopped for him to examine it, but that in his opinion it did not run true and its use was likely to damage the

machinery. It is claimed, however, that it continued to be used with safety so long as the mill was in operation.

The cause was submitted to the court, a jury being waived. Plaintiff recovered judgment for the amount of its entire claim except the item of $41.50, the expense of repairing or reboring the second wheel. No interest was allowed. From this judgment plaintiff prosecutes this writ of error, and defendant assigns cross-errors.

CRATTY BROS., JARVIS & LATIMER, for plaintiff in error.

TENNEY, COFFEEN & HARDING, for defendant in error; JAMES H. WILKERSON, of counsel.

MR. JUSTICE FREEMAN delivered the opinion of the court.

Plaintiff complains that the judgment was erroneous in failing to allow interest, and in charging it with the cost of reboring the second wheel, which was done pursuant to an agreement made directly between the defendant and the manufacturer of the engine.

It is contended in behalf of the defendant that plaintiff did not comply with the terms of the original contract to furnish a complete engine; that the second fly-wheel was necessary to that end because of the defect in the first; that plaintiff is, therefore, properly chargeable with the cost of the second wheel and all the expense incurred in getting it to its destination; and that defendant is entitled to be allowed the expense of reboring the second wheel to make it fit for use.

First, was the contract one in which, there being no express warranty, the law will imply that the parties contemplated the workmanship of the engine to be such that every part should fit and operate perfectly at once when it should be set in operation? It is urged in behalf of defendant that this was an executory contract for the sale of personal property, and that as the engine was not manufactured when the order for it was given, the rule with reference to warranty is different from what it would be in

the case of a purchase from a dealer of an article already constructed, which the purchaser had an opportunity to examine; that the law implied as part of the contract in the absence of any express stipulation to that effect, that the engine should be of fair merchantable quality and condition and fit for the uses for which it was purchased, and that the fly-wheel in the case at bar did not meet these requirements, citing Kohl v. Lindley, 39 Ill. 195–203; Doane v. Dunham, 65 Ill. 512; Lanz v. Wachs, 50 Ill. App. 262. We are of opinion, however, that the facts in this case bring it under the rule that "there is no implied warranty as to quality by a vendor who is not a manufacturer." Martin v. Roehm, 92 Ill. App. 87–88, citing Archdale v. Moore, 19 Ill. 565; Kohl v. Lindley, 39 Ill. 195–203; Peoria Grape Sugar Co. v. Turney, 175 Ill. 631–632; Ramming v. Caldwell, 43 Ill. App. 175–179. In Kohl v. Lindley, *supra*, the rule adopted in Archdale v. Moore is again stated to be that "in the case of articles manufactured by the seller, * * * there is an implied warranty that they are manufactured in a workmanlike manner; but in the case of a mere vendor of the article, if there is neither fraud nor an express warranty, the purchaser buys at his peril." In that case it is further said (p. 205) that where it appeared the article "was fit for the uses for which it was purchased," the seller would recover.

It is clear that the defendant knew the engine was to be manufactured by a third party, the Murray Iron Works. The correspondence which constitutes the contract so states. There is in defendant's order a reference to another engine ordered through plaintiff, the price of which, it appears, was the same as the one in controversy, made up of cost of engine and fly-wheel, freight from the place of manufacture to Chicago, and of plaintiff's commissions. One of the defendant's witnesses testifies that defendant knew by reputation the engine the Murray Iron Works manufactured, and had known it for several years, when the order in controversy was given. Defendant knew what it was purchasing, and it is reasonable to sup-

pose relied on the reputation and workmanship of the manufacturer rather than upon any implied warranty by the dealer. The evidence tends to show not only that plaintiff was at most a mere dealer through whom defendant's order was given, but that it may have been a broker who sold on commission. Being a mere vendor and not the manufacturer, the contract of sale though executory, implied no warranty that the engine should be manufactured in such a manner that its workmanship should be perfect in every respect. As to that the defendant took the risk. No reason appears why, when the engine and fly-wheel were delivered to it by the Murray Iron Works, it could not have inspected them before shipping to its customer. It had at least equal opportunity with the plaintiff to ascertain whether or not the wheel was in any way defective. It did inspect the second fly-wheel before shipping it to New Mexico.

There being then no warranty, express or implied, that the fly-wheel would be so manufactured as to fit and work perfectly in the first instance, its failure to do so, if such failure there was, did not make it obligatory upon the plaintiff to furnish the second wheel, and it was not under obligations to do so at its own expense.

It does not conclusively appear that the fly-wheel complained of was not fit for the purpose for which it was designed and purchased. On the contrary, it was used by the party for whom it was ordered, and to whom it was sold by the defendant. In the order for the engine, defendant said: "It is understood that this (the engine) is to be complete in every way." The connection shows the meaning of this to be that the engine was to be complete in the sense of having all its parts and appliances, some of which are specified. It is not disputed that it was so complete. While there is evidence tending to show that upon its arrival the first fly-wheel was found by the mining company to be "out of true," yet when it was "shimmed" at the hub—a "shim" being "a piece of metal put in to fill a vacant space"—it thereafter apparently ful-

filled its purpose in the operation of the engine. Its con
tinued use was evidence of an acceptance by the mining
company of the original wheel. Hercules Iron Works v.
Dodsworth, 57 Fed. Rep. 556.

The trial court allowed an item of $41.50 expended by
defendant in putting the second fly-wheel in order. It ap-
pears from one of defendant's letters in evidence, that this
was done under an express authorization of the manufac-
turer to the defendant, and that the former agreed to stand
the expense. We know of no reason, therefore, why de-
fendant should recover from plaintiff for work which the
manufacturer authorized and agreed to pay defendant for
doing, an arrangement in which plaintiff had no part.

Plaintiff insists that its claim to interest from the time
when defendant preferred its counter claim was errone-
ously disallowed. That there was in effect an agreement
between the parties at that time that the amount claimed
by the plaintiff was correct, is not disputed. Defendant
preferred a counter claim as an offset against a small part
of plaintiff's account, but conceded that the amount was
correct subject to the offset. The balance of $2,104.97 for
which defendant drew its check, which it asked plaintiff to
accept "in full settlement," was conceded to be due. Part
of the amount seems to have been due on previous trans-
actions as to which there was no question. That much of
the account stated was agreed upon between the parties.
As to it there was a liquidation and settlement. Plaint-
iff urged defendant to pay that sum as in good faith should
have been done, leaving the comparatively small amount
in dispute for adjudication by the courts. This defendant
refused, and sought to compel the plaintiff to accept its
terms by withholding payment of what was conceded to
be due. Subsequently plaintiff again wrote as follows:

"You now admit *under oath* that you justly owe us
$2,104.97. Now the question is a very plain one; should
we not have our money? If you are truly indebted to us,
why should you not pay us? If our claim is an honest
one, why should it not be respected in the usual way be-
tween merchants by payment? As between man and man

why should you delay? Have we done anything to deprive us of the use of so large an amount? If there was any question of law or lawyers involved we would not bother you personally, but there is only the question of justice and fair dealing among neighbors and friends. Before the dispute arose about the band wheel, we were not able to learn just what amount you contested, but now it is plain from your own affidavit that the amount of $2,104.97 is not disputed.

You do not pretend that the result of the litigation will in the least depend upon whether this just amount be paid to us or not; then why not pay it, so that we, and not yourselves, may have the use of that which is our own?"

We are of opinion that plaintiff is entitled to interest upon the amount admitted to be due from April 9th, when the balance not in controversy was ascertained. The refusal of the defendant to pay the amount it conceded to be due independent of anything in controversy between the parties, for the purpose of thereby forcing acceptance of a less sum than the whole amount due, constituted we think, " an unreasonable and vexatious delay in payment," such as under the statute entitled plaintiff to interest; and interest is also we think allowable " on money due on settlement of account."

The judgment of the Circuit Court will therefore be reversed and the judgment entered here for the full amount of the plaintiff's demand, viz: $2,656.52, with interest added at five per cent. on the sum of $2,104.97 from April 9, 1900.

*Reversed and judgment here.*