172    APPELLATE COURTS OF ILLINOIS.

Elder v. Insurance Company of North America, 206 Ill. App. 172.

## George H. Elder, Appellee, v. Insurance Company of North America, Appellant.

1. PLEADING, § 476*—*when defect in declaration is cured by verdict.* In an action on a fire insurance policy to recover for a loss, an objection that the declaration failed to allege that the demand sued for was due or that the insured property at the time of the fire was located at the place described in the policy, *held* of no force after verdict and judgment.

2. SALES, § 181*—*when title passes.* In a sale of personal property where anything remains to be done to complete the contract, such as ascertaining the quantity or delivering the possession, the title does not pass until the contract is thus completed.

3. INSURANCE, § 461*—*what constitutes waiver of proofs of loss of property by fire.* Where defendant's adjuster procured from plaintiff a statement of plaintiff's entire loss and of the property saved from the fire, with the values of it, which the adjuster accepted and took away with him, *held* that there was a waiver of any proofs of loss, in an action to recover under a fire insurance policy for a loss.

Appeal from the Circuit Court of Saline county; the Hon. A. W. LEWIS, Judge, presiding. Heard in this court at the October term, 1916. Affirmed. Opinion filed April 13, 1917.

BURKE G. SLAYMAKER and WHITLEY & COMBE, for appellant.

A. G. ABNEY and W. F. SCOTT, for appellee.

MR. PRESIDING JUSTICE MCBRIDE delivered the opinion of the court.

It appears from the record in this case that the appellee was the owner of the building located on Lots 1 and 2 in Block 9 in Carrier Mills, Illinois, and that he was engaged in the business, in the building, of making harness and carrying a stock of merchandise consisting of harness, robes, buggies, etc., and that on

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

the 20th day of October, 1914, he procured a policy of insurance to be issued by appellant, insuring the said building for $800 and the stock of merchandise for $800, and continued business therein until the time of the fire hereinafter referred to. That on January 7, 1915, appellee entered into a verbal contract with John A. Lewis for the sale of the stock of merchandise above referred to, and by the terms of this contract Lewis purchased the stock of goods which was to be invoiced to him at the wholesale price, less freight and drayage, and Lewis was to pay appellee $400 in cash and to give him a note for the balance, with his son as security. The invoicing was to begin on January 8th and the appellee was to surrender possession of the stock of goods to Lewis on the Monday following, which would be January 11th; at that time Lewis was to execute his note, appellee was to execute to him a bill of sale for the stock of goods, and was to assign to Lewis the policy of insurance. On January 8th they began invoicing the goods and while engaged in invoicing the doors were not closed and as they would invoice the different articles they would be set apart as invoiced goods. During the time a few articles were sold out of the store and Elder told Lewis as such sales were made to keep account of them. On January 9th, Lewis returned to his home but left his son Hiram to assist in the invoicing. They proceeded with the invoicing on Friday and Saturday, January 8th and 9th, but did not complete the same. It was all completed except about $150 worth that had not yet been invoiced. On Saturday night, January 9th, a fire occurred in the building which destroyed the building and the principal part of the merchandise. Appellee caused appellant to be notified of the fire and of the destruction of the stock of goods, and on the night of January 27th, H. Fredley, the

174    APPELLATE COURTS OF ILLINOIS.

Elder v. Insurance Company of North America, 206 Ill. App. 172.

general adjuster of the appellant came to Carrier Mills to ascertain the loss and to have a conference with appellee, which he did. It appears from the testimony of appellee that on that night the adjuster asked appellee for his invoice of the stock of goods, which appellee gave to him, and then agreed to furnish him an invoice as to the remainder of the goods that had not been invoiced before the fire. That appellee advised him he could do that as he thought from memory. Appellee left the invoice with the adjuster and met him again on the next morning, at which time he furnished the adjuster with a memorandum of the goods that had not been invoiced, and the adjuster also asked to be furnished with a list and value of the goods that had been saved from the fire; this the appellee also did, and while the agents of appellee were engaged in invoicing the goods that were saved from the fire the adjuster came there and directed them to classify the goods with reference to their value so they could be easily reckoned in the settlement. This occurred on the morning of January 28th, as testified to by appellee, and appellee further states that in the afternoon of that day the adjuster requested him to sign a waiver, which he did. The adjuster testified that the waiver was signed in the morning and before anything was done, but this is denied by appellee. Appellee further testified that after the invoice of the stock of goods that were destroyed by fire and the amount that had been saved from the fire were delivered to the adjuster, that the adjuster told him that this would be all right and he would soon receive a check. This is denied by the adjuster. The adjuster says he told him that he doubted if the company would settle it, but he would report it and they could do as they thought best about it. After the adjuster had returned to the home office, appellant sent a check and proof of loss as to the building, and as to the

goods not invoiced at the time of the fire, but declined to pay anything further on account of the loss of the goods. This the appellee refused to receive and instituted this suit.

The policy issued contains the following clause: "This entire policy shall be void  *  *  *  if any change, other than by the death of an insured, take place in the interest, title or possession of the subject of insurance (except change of occupants without increase of hazard), whether by legal process or judgment, or by voluntary act of the insured, or otherwise.  *  *  *  Otherwise that the said entire policy should be void if the interest of the insured be other than unconditional and sole ownership." It also contained the usual clause as to giving notice of the loss and providing that no suit should be sustained upon said policy until after full compliance by the insured with the foregoing requirements.

The appellant contends that the declaration was demurrable for the reason that it did not allege that the demand sued for was due and that it failed to allege that the insured property at the time of the fire was located at the place described in the policy. These are matters that should have been called to the attention of the court during the trial, but we think that they can have no force after a verdict and judgment.

The principal contention of the appellant, and the one to which most of his brief and argument is devoted, is that there is a clause in the policy which provides: "This entire policy shall be void  *  *  *  if any change, other than by the death of an insured, take place in the interest, title or possession of the subject of insurance." We think from an examination of the record that this is the only question that requires any consideration by this court.

176    Appellate Courts of Illinois.

Elder v. Insurance Company of North America, 206 Ill. App. 172.

It is contended by counsel for appellant: First. That by virtue of the contract that was entered into between appellee and Lewis, the title to this stock of merchandise passed to Lewis; and second, at least an interest in the goods passed to Lewis. It appears from the evidence of Lewis and the appellee that under the contract the goods were to be invoiced; that after the goods had been invoiced the appellee was to make Lewis a bill of sale and was also to transfer to Lewis the insurance upon the stock of goods, and then Lewis was to make a cash payment of $400 and give him his note, with his son as security, for the remainder; and it further appears that the agreement was that possession of the stock of goods was to be delivered to Lewis on Monday, January 11th. It is true the $400 cash payment was made on Saturday because of the fact that Lewis was going away at that time. In a sale of personal property where anything remains to be done to complete the contract, such as ascertaining quantity or delivering possession, the title does not pass until the contract is thus completed. *O'Keefe v. Kellogg,* 15 Ill. 347; *Honeycutt v. Logg,* 160 Ill. App. 237. The case of *Honeycutt v. Logg, supra,* contains the following language: "The rule established by the courts of this State is that in the sale of personal property, when anything remains to be done to complete the contract, such as ascertaining the quantity or delivering possession, the title does not pass until these things are done. *Low v. Freeman,* 12 Ill. 467; *O'Keefe v. Kellogg,* 15 Ill. 347; *Schneider v. Westerman,* 25 Ill. 514; *Frost v. Woodruff,* 54 Ill. 155; *Richardson v. Rardin,* 88 Ill. 124." Many cases have been cited by appellant showing that where there has been a sale of a particular article, and in which the contract was completed, that the title passed, and while it is true there are cases of that character in which the courts have held that the

purchaser may recover the property, but as we understand it, those were cases in which nothing further was to be done to complete the trade. In the case now under consideration, there was the invoice to be completed, the note executed and the appellee was to execute the bill of sale and deliver possession of the goods before the contract was in fact completed, and we do not believe that the title or any interest in the goods passed to Lewis, and that Lewis was in a position to refuse to execute the note unless the goods were delivered to him according to contract.

It is also insisted by counsel for appellant that instruction No. 6 was erroneous in that it did not leave to the jury the question of intention which was one of fact. This instruction is not subject to this criticism. It simply points out, in the language of the decision heretofore cited, that if anything further was to be done or possession given that this would not constitute a conveyance. We understand this to be in accord with the foregoing decision. They claim that instruction No. 8 should not have been given because it was with reference to a waiver of the conditions of the policy, when no such issue was involved. If not applicable to any issue, we do not see how the appellant was harmed thereby, but there was evidence in the record tending to show a waiver of proof of loss. The conduct of the adjuster and other matters developed tended to show such a waiver. More than that, the adjuster procured from the appellee an actual statement of the entire loss and of the property saved from the fire, together with the values of it, and this is all that he could have done by any proof of loss. This was accepted by the adjuster and taken home with him, and we can see no reason why that would not be a waiver of the right to require from appellee a sworn statement of the proof of loss. In the case of *Dwelling House Ins. Co. v. Dowdall*, 159 Ill. 186, the Su-

preme Court in commenting upon what constitutes a waiver of the proof of loss says: "The testimony of the plaintiff as to what took place between herself and the company's agent, Smith, is wholly uncontradicted. She says he called upon her for proofs of loss, and took down, in writing, what she and her son told him. True, she did not furnish him proofs within the requirement of the policy; but if the agent called for 'proofs of loss,' and without objection accepted what was given him in response to that request, the insured surely had a right to assume no other proofs would be required. Upon being notified that the company did not so understand the matter, she furnished the formal statement required by the terms of the policy, to which no objection was made except that it was not furnished in time. Importance should also be attached to the fact that the agent offered to pay a part of the loss. That fact was well calculated to lead the insured to suppose that the loss was admitted, the only dispute being as to the amount she was entitled to receive." In this case there was sufficient evidence to warrant the jury in finding that the appellee had furnished the adjuster with an invoice of the goods destroyed and those saved, and these were taken away by the agent, and this was certainly a waiver of any right to demand further proofs of loss. *Manchester Fire Assur. Co. v. Ellis,* 85 Ill. App. 634; *Mitchell v. Orient Ins. Co.,* 40 Ill. App. 111. We do not believe that the appellant is in a position to now insist that appellee is not entitled to recover by reason of any failure to furnish proofs of loss in the manner prescribed by the policy.

It is also urged by counsel for appellant that the court erred in modifying one of its instructions. We have examined the instruction and find that the modification is in line with the authorities heretofore cited and does not constitute error.

It appears from the record in this case that the loss was an honest one; that the appellee had paid the appellant for carrying this loss and no fraud is charged or claimed, and no extra hazard is shown in any manner by the contract of sale entered into, and we are fully satisfied that the appellee had a just and meritorious cause of action, and that the verdict of the jury and judgment of the court was just, and the judgment of the lower court is affirmed.

*Judgment affirmed.*