Frank Marino, Plaintiff-Appellee, v. Firemen's Insurance Company of Newark, New Jersey, Defendant-Appellant.

Gen. No. 10,503.

Opinion filed February 1, 1952. Rehearing denied March 20, 1952. Released for publication March 24, 1952.

CLAUSEN, HIRSH & MILLER, of Chicago, and SCHENK, DIMAS & VINSON, of Joliet, for appellant.

GLENN E. MILLER, of Lockport, for appellee.

MR. JUSTICE WOLFE delivered the opinion of the court.

This appeal comes to us from a judgment entered for the plaintiff in the sum of $1,056.42, upon findings by the trial court without a jury. The amount of damages, being for collision repairs to a motor vehicle allegedly insured by defendant, was stipulated and is not an issue.

It appears that plaintiff was a trucker in Joliet, Illinois. On November 1, 1946, he went to the office

of Kahn & Brown, defendant's agent in Joliet, and at his request was interviewed by one Richard Cheadle, a salesman for the agency who had handled plaintiff's insurance before. Plaintiff told Cheadle that he had a white truck-tractor for which he wanted insurance coverage. Cheadle made a notation for the office girl for the issuance of a policy and, as plaintiff testifies, told plaintiff: "Of course, you are protected from this minute." Cheadle does not deny so stating. Plaintiff did not further specify the insurance desired nor any particular insurance company to carry it. However, Cheadle testified to having all information necessary to write plaintiff's policy except the motor number, and that he told plaintiff with which company the insurance would be placed, i. e., defendant. Cheadle refused payment for the policy at that time, telling plaintiff that he could pay later.

Two or three days later Cheadle went to plaintiff's home to have an application signed for the policy, and apparently secured the same. At least, when cross-examined upon whether he had "caught" plaintiff at home for that purpose, Cheadle answered "yes."

On November 16, 1946, plaintiff's truck-tractor was damaged in a collision. Later that same day plaintiff went to Kahn & Brown and reported the loss to George Kahn, principal owner of the agency. Plaintiff testified that Kahn there told him that he would be taken care of, and the loss would be taken care of, and this Kahn does not deny. Kahn then learned from his office girl that no policy had yet been written for plaintiff, whereupon Kahn directed her to write a policy covering plaintiff, and to back-date the policy to November 1, 1946. This was done and, on November 19, 1946, a copy of the policy together with a notice and particulars of the loss were sent by Kahn & Brown to defendant. In an accompanying letter Kahn & Brown told defendant that the policy had not been previously written due to lack of information.

The agency then held up delivery of the policy for a few days to afford defendant, as Kahn testified, an opportunity to decline the risk. When asked what he would have done if defendant had immediately declined the risk, Kahn testified without objection that he would have forgotten about the matter.

Shortly thereafter, defendant not having declined, the policy was delivered to plaintiff and he paid the premium thereon to the agency. On January 15, 1947, Kahn & Brown remitted the premium to defendant who retained it. Plaintiff repeatedly continued to go to Kahn & Brown's office after the loss, to learn when and if his repairs were to be paid. On an unfixed date early in 1947, the testimony here being in conflict, plaintiff met one Mr. Gorman, an attorney for defendant, at the agency. There is uncontradicted testimony that Gorman there said to plaintiff: "Maybe we are going to fix the truck, I will let you know in two or three days." However, no such decision was given to plaintiff until May 12, 1947, when defendant wrote to Kahn & Brown denying liability on the policy and directing that plaintiff be tendered back his premium. Plaintiff refused to accept return of the premium.

Kahn & Brown's authority as defendant's agent to countersign and deliver defendant's policies, has not been disputed, nor is there any denial that the type of insurance policy here involved covered the collision damage for which suit is brought.

█ Appellant, the defendant below, contends first that a loss must occur after the insurance contract is created, in order to be covered. As a general statement, this is certainly not a proposition which anyone would seriously dispute, and is not the issue presented by these facts. The primary question before us is whether the parties became bound to an insurance contract on November 1, 1946. We are of the opinion that they did. If, as appellant argues, there must be a complete technical discussion and detailed under-

543

standing of insurance coverage before a meeting of minds occurs sufficient to bind an insurer by parol, little insurance would be sold. The public generally would not be qualified to so negotiate. This court cannot limit the purchase of insurance to experts dealing at their leisure with the myriad details of a policy, and we cannot close our eyes to the commonly-known business practice of oral binders. Such a practice benefits both the insurer and the insured. However, any further discussion of parol mutual assent in this case is obviated by the evidence, to wit: That plaintiff's written application, for the policy in question, was secured before the loss. Cheadle answered affirmatively when asked if he had such an application signed by plaintiff, and there is no evidence that this written application was not taken. No application was offered into evidence, but on the other hand the statement of its existence was not rebutted.

Whether or not an agent's failure to designate a particular insurance company prevents an oral binder, has no precedent in Illinois. At least, the parties' briefs here indicate none. The law of other cited jurisdictions on this point might, or might not be adopted by this court in a proper case, but we are not here called upon so to decide. The salesman Cheadle testified that he did tell plaintiff with which insurance company his policy would be placed. This is corroborated by Kahn's testimony that ninety-five per cent of his vehicle insurance was placed with defendant, and the testimony of both Kahn and Cheadle that trucks of plaintiff's size were not placed with the one other insurance company represented in the agency. Upon cross-examination of Cheadle, there was some indication that he had testified differently on prior deposition, but he was not asked to, nor did he retract his testimony at the trial. Moreover, the deposition was not offered into evidence, and we are unable to evaluate

the substance of the context thereof from which counsel partially quoted. No sufficient impeachment of Cheadle appears in the record from which we can disbelieve his testimony at the trial that plaintiff was told the name of his insurance carrier.

 Appellant next contends that, even if its insurance policy was validly issued, the insured cannot recover by reason of his failure to furnish a written proof of loss within sixty days of the loss, as required by the policy. It is stipulated in the record that no such written proof was submitted. We agree with appellant that there is a distinction between a notice of loss, which the insured did give, and proofs of loss, which he did not. Further, it cannot be doubted that a policy requirement of written proof of loss for the insurer's protection is a reasonable one, the validity of which has long been established. But it is not the policy of the law to favor a forfeiture, and it is strictly in accord with the settled rule in this State, to hold that a breach of a particular provision shall be waived or abandoned by acts which recognize the continued validity of the policy. *Fray v. National Fire Ins. Co.*, 341 Ill. 431, 173 N. E. 479; *Bennett v. Union Cent. Life Ins. Co.*, 203 Ill. 439, 67 N. E. 971. The statements made by Kahn, indicating that plaintiff and his loss would be taken care of, coupled with the defendant's silence for more than six months thereafter during which time the premium was retained, certainly led the insured plaintiff to believe that defendant considered the policy in effect and that formal proof of loss was unnecessary. *Elder v. Insurance Co. of North America*, 206 Ill. App. 172. The evidence is that neither Kahn nor anyone else ever said anything to the insured about a proof of loss, but that he was told that he would be taken care of. We believe that the trial judge was correct in finding that the standard provision of defendant's policy, with regard to proof

of loss, was waived by the conduct of defendant and its agent, Kahn, during the six-month period after the loss prior to defendant's denial of liability.

■ Appellant's final contention is that plaintiff misrepresented himself as sole owner of the insured vehicle, whereas he is said not to have been, and that the policy is therefore void. With this we cannot agree. The trial judge found that plaintiff owned the insured truck, regardless of where his certificate of title might be. The evidence is that plaintiff bought the truck in 1945, but did not use it until his two sons returned from military service the following year. The sons then went to work for their father, the plaintiff, as drivers and he paid them each twenty-five per cent of the business profits, retaining fifty per cent for himself. He testified that he owned the truck on November 1, 1946, being the day he applied for insurance, and on November 16th, the day of the loss. This evidence of ownership, uncontradicted by any evidence of a partnership or other business contract to the contrary, is sufficient to constitute plaintiff as sole owner within the meaning of the policy provision. There is no evidence that registration of title in either of plaintiff's sons was material to defendant's risk, or that plaintiff had other than sole ownership recognizable in equity regardless of any name in which the title may have been registered.

We find no reversible error in this case and the judgment is affirmed.

*Judgment affirmed.*