Fagan *vs.* Faulkner.

------

FAGAN *vs.* FAULKNER.

The practice of compelling the plaintiff to a peremptory non-suit will not be tolerated.
But where the Court sits as a jury, finds as in case of non-suit, and renders final judgment thereon for defendant, this is a bar to any future action, and this Court will consider it as a finding on the merits of the cacse, as presented by the evidence.
When something remains to be done, as between vendor and vendee of personal property, for the purpose of ascertaining either the quantity or price of the articles, there is no such delivery as passes the title, though the price be in part paid.
Nor need there be an express agreement that something further shall be done. It is enough if it appear from the circumstances of the case to be necessary.
The decisions applicable to the English statute of frauds as to sales of merchandise, are likewise applicable to ours.
Proof that defendant bargained with plaintiff for fodder, price and quantity not proved, and that defendant promised to go and take it from a certain field, does not establish a sale and delivery.

THIS was an action of assumpsit, tried in the Pulaski Circuit Court, in November, 1842, before the Hon. JOHN J. CLENDENIN, one of

the circuit judges. Catharine Fagan, as administratrix of Stephen Fagan, sued Nicholas Faulkner, on two counts. The first alleged that the defendant bargained for, and bought of her, five stacks of fodder, at $30 a stack, which she agreed to deliver and he to pay for; and that she offered to deliver, and he refused to receive and pay. The second was the common count for fodder sold, money due, and *account* stated.

Neither party requiring a jury, the case was tried by the Court, on the plea of *non assumpsit.* The Court having heard the evidence, the defendant moved the Court to find as in case of non-suit, which was done, and judgment that "the plaintiff take nothing by his suit, and have and recover of the plaintiff all his costs." To the finding of the Court the plaintiff excepted, and set out the evidence; the amount of which was, that plaintiff had some ten or twelve stacks of fodder, and defendant bargained with her for some, but for how much, or at what price, the witnesses did not know. Afterwards, she sent him word that the cattle were destroying his fodder, and he had better come and take it away. He responded that he would do so as soon as the upper ferry was put in operation, and assigned as a reason for not taking it away, that the lower ferry charged double the price of the upper one. The witness who carried this message, *understood* from the defendant that he would take away what fodder there was in the front field, amounting to five or six stacks, but did not know *positively* that he had purchased the whole of it, nor how many stacks there were. The quantity of fodder in a stack, and its ordinary price was proven; and that the cattle afterwards destroyed the fodder in the front field. The case came up by writ of error.

*Hempstead & Johnson,* for plaintiff in error. A common count may frequently save a verdict, where the evidence may vary from the *special* count: as, if the plaintiff declare specially for building a house, according to an agreement; if he fail to prove a compliance with the agreement, he may frequently recover on the common count, for work and labor actually done. 1 *Ch. Pl. Payne vs. Bacomb, Doug.* 651. *Leeds vs. Burrows,* 12 *East Rep.* 1. *Griffith vs. Young,* 12 *East,* 513.

Fagan *vs.* Faulkner.

*Farr vs. Price*, 1 *East*, 58. *Mowbray vs. Fleming*, 11 *East*, 285. *Bastew vs. Butler*, 7 *East*, 479.

Where a party declares on a special contract, and fails in his right to recover on it altogether, he may recover on a general contract, if the case be such that, supposing there had been no special agreement, he might still have recovered for goods sold, money paid, work done, *et cet.* *Tuttle vs. Mayo*, 7 *J. R.* 132. *Leeningdale vs. Livingston*, 10 *J. R.* 136. *Keyes vs. Stone*, 5 *Mass. Rep.* 391. *Robertson vs. Lynch*, 18 *J. R.* 451. *Cook vs. Meenstone*, 4 *Bos. & Pul.* 351. *Bull. Nisi Prius*, 139. *Lawes on Pl. m. p.* 4, 11.

There is one exception to this rule, which is, that the plaintiff will not be allowed to recover on the general counts, where the special agreement continues in force. *Raymond vs. Bearnard*, 18 *J. R.* 274. *Wilt vs. Ogden*, 13 *J. R.* 56. *Jennings vs. Camp.*, 13 *J. R.* 94.

It is believed that this case is not within the statute of frauds. Our statute is almost a literal transcript of the English statute, so that the English cases are entitled to great weight, if they are not conclusive.

The general rule is understood to be, that where goods are *ponderous*, and incapable of being handed from one to another, there need not be an actual delivery; but that may be done which is *tantamount* to it: such *indicia* as shows an *actual sale* by the vendor, and an immediate *acceptance* by the vendee. *Chaplin vs. Rogers*, 1 *East*, 192. *Hinde vs. Whitehouse*, 7 *East*, 558. *Searle vs. Reeves*, 2 *Esp. Rep.* 598. *Hollingsworth vs. Napier*, 3 *Caine's Rep.* 186. *Bailey vs. Ogden*, 3 *J. R.* 399. *Vincent vs. Germond*, 11 *J. R.* 283. *De Ridder vs. McKnight*, 13 *J. R.* 294. *Outwater vs. Dodge*, 6 *Wend.* 397. *Jennings vs. Webster*, 7 *Cow.* 257. *Elmore vs. Stone*, 1 *Taunt.* 457. 1 *Swift's Dig.* 264.

Whether there is a *delivery* or *acceptance* is a question of fact for the jury. 13 *J. R.* 294. 1 *East*, 92. 1 *Moore*, 328. 6 *Cow.* 250. 7 *Cow.* 85.

*Ashley & Watkins*, contra.

*By the Court*, PASCHAL, J. This Court has already ruled, at the

present term, that the practice of compelling a plaintiff to a peremptory *non suit* will not be tolerated. See *Martin & Van Horn vs. Webb, ante.* But as the finding and judgment in this case is a bar to a future action, we are therefore only to consider the motion as in the nature of an instruction asked; and that the Court found upon the merits of the case, as presented by the evidence. The question, therefore, for our consideration is, was there such a state of facts proven as would have authorized a verdict for the plaintiff, on an indebitatus assumpsit?

The principles on this subject are few and familiar. They have varied very little in their application in adjudged cases. The whole rule may be resolved into a few words. When something remains to be done, as between the seller and buyer, or for the purpose of ascertaining either the quantity or price of the article sold, there is no delivery, and the property does not pass, though the price be in part paid. And there need not be an express agreement that *something further shall be done.* It is enough that it appear, from the circumstances of the case, to be necessary. Thus, where the plaintiffs, having cotton at their stores, in Brooklyn, 69 bales marked G. G. & Co., at the store of B., and 30 of the same mark at the store of M. & W., sold 66 bales marked G. G. & Co. to the defendants, delivering them a *pro forma* bill of parcels, thus: " 66 bales, say 19,800 lbs., $12 per cwt., one per cent. off," the defendants paying, at the time, $1800, in part for the whole. Then *the cotton in M. & W's* store was destroyed by fire, and the defendants demanded of the plaintiffs an order for the 66 bales, which was refused; but the plaintiffs gave an order for 36 bales. These were then weighed by the plaintiffs, and another bill of parcels delivered to the defendants, including the 36 bales, according to the weighmaster's bill, and 30 bales at a certain weight each, with the remark, " deduct, for supposed loss, 150." The 36 bales were delivered at the time of weighing: " Held, that the property of the 30 bales did not vest in the defendants, and that therefore the plaintiffs could not recover the price. *Rasselye vs. Mackie,* 6 *Cow.* 250.

Such cases have generally been held to come within the statute of frauds. And thus, where a party purchased several articles in a shop,

at separate prices, and some were severed from the bulk, and marked by him, it was held that the whole purchase was an entire contract, and being above £10, was within the statute, and no sufficient transfer and acceptance to bring it within the exception of the 17th clause; and that, to satisfy the exception, there must be an actual transfer and acceptance of the goods, or part thereof. *Baldny vs. Parker, 3 Barn. and Cress.* 37. 2 *Starkie Ev.* 5 *American edition,* 354. Where goods were made to defendant's order, and he took away some part, held, that it was not a sufficient acceptance of the goods within the statute, and that the plaintiff could not recover on the count for goods sold and delivered. *Thompson vs. Maarom, 3 B. & C.* 1. See 4 *Wheaton,* 89, *note a,* where the decisions on this section of the statute are collected and accurately stated. The cases on this subject are numerous, and such as are doubtless familiar to the profession. A further citation of authorities is, therefore, deemed unnecessary.

The 17*th section of chap.* 3, 29 *Car.* 2, is in the following words: " No contract for the sale of any goods, wares, and merchandises, for the price of £10 or upwards, shall be allowed to be good, except the buyer shall accept part of the goods so sold, and actually receive the same, or give something in earnest to bind the bargain, or in part of payment, or that some note or memorandum, in writing, of the said bargain, be made and signed by the parties to be charged by such contract, or their agents thereunto lawfully authorized." Our statute on the subject varies very little. The 2*d section, chap.* 30, *p.* 187, is in the following words: " No contract for the sale of goods, wares, and merchandise, for the price of thirty dollars or upwards, shall be binding on the parties, unless, first, there be some note or memorandum signed by the party to be charged; or, second, the purchaser shall accept a part of the goods sold, and actually receive the same; or, third, shall give something in earnest to bind the bargain, or in part payment thereof." By a close analysis of this statute, it will be seen that the decisions which are applicable to the English statute, are also applicable to ours. In the case under consideration, there was, in our opinion, no sale or delivery such as to take the case out of the statute.

In this case, two things remained to be done between the plaintiff and

defendant: the price and quantity were yet to be fixed. This could not be done by first supposing a given quantity not ascertained by proof, and then arrive at the price by proving a *quantum valebant*, and thereby implying a promise to pay. This is travelling from the unknown to the still more unknown—from the uncertain to that which is still more uncertain. The bargain, so far as the proof goes, was to purchase fodder of the plaintiff. But the quantity and price were not agreed upon. The plaintiff might, therefore, have delivered him any other fodder as well as the fodder in the particular field. Proof of an acknowledgment of the defendant that he was to take certain stacks of fodder from the plaintiff, was afterwards attempted. But this, at least, only proves a promise to purchase, but does not prove a delivery of the property in earnest. If he really made such a bargain, and in consequence of the *non* fulfilment of his engagement, the plaintiff lost a sale of the property, or suffered damage, she might have her special action on the case for consequential damages, but she could not maintain indebitatus assumpsit. Even in cash sales, two things are necessary to the transfer of title to personal property: payment by the vendee, and actual or constructive possession by the vendor. *Ward vs. Shaw,* 7 *Wend.* 404. Could Faulkner have maintained trover or detinue against Fagan, had he demanded the property, and she had refused to deliver it? We think not, because he had neither paid for the property, nor paid earnest, nor obtained a delivery actual or constructive. The rights of vendor and vendee must be mutual, except so far as the right of the vendee remains to seize the property *in transitu.* Judgment affirmed.