## CUSHMAN & al. versus HOLYOKE & al.

The sale of an article, delivered and carried away, may be valid, although the price remains to be ascertained by an admeasurement at another stipulated time and place.

The admeasurement, when so made, although differing from one made at the time and place of the delivery, will control in determining the price.

Thus, saw logs, at the river in the forest, were there sold and delivered at an agreed price per thousand, to be driven by the purchaser, and to be paid for at a scale made at the place of manufacture; *Held*, that a survey there made will be binding, although it shows the quantity to be less than was shown by a scale of them, made at the time and place of delivery.

Where the quantity was to be ascertained by a survey of an agreed surveyor, if the purchaser should desire it, such desire may be inferred from the fact that the purchaser procured such a survey, although without notifying the seller.

Where saw logs were purchased, to be driven to the boom by the purchaser, and to be paid for at a scale there to be made, and a part of the logs were left by the way upon the intervales and shoals; *Held*, that the purchaser was not chargeable for any logs so left, if, in the driving, he used such care and diligence as prudent men ordinarily use in their own affairs.

ON EXCEPTIONS from *Nisi Prius*, TENNEY, J. presiding.

ASSUMPSIT for a quantity of saw logs.

The plaintiffs having drawn the logs to the landing on the bank of the river in the forest, sold and delivered them there, to be driven down the river by the defendants. By a scale made when the logs lay upon the bank, there was one lot. 1515 in number, amounting to 528,100 feet, and another lot amounting to 23,000 feet, the number not being recollected.

The plaintiffs made inquiry of a witness, concerning the terms of sale. The defendants objected to the testimony, upon the ground that the contract was in writing, and introduced a paper signed by the plaintiffs as follows: — $500. No. 5, Range 8. March 25, 1850. Received of C. & R. Holyoke, [the defendants,] $500 in part pay for logs bought of us at $10 per M, on the bank, marked A. & J. C. at Howard's scale, if required below boom.

The boom is at Oldtown, one hundred and twenty-five miles below the landing at which the logs were sold.

The defendants contracted with one Stinson to drive the logs.

Whether Stinson had made a clean drive, or whether he had left many logs upon the intervales and shoals, there was conflicting testimony.

In the spring, after the drive had arrived, the boom broke, and there was evidence tending to show that some of the logs were carried away by the current and lost, and there was evidence tending to show that the defendants secured them below the boom. The defendants introduced bills of a scale made by Howard below the boom, showing the quantity to be 1205 sticks, amounting to 347,610 feet, also scale bills by other surveyors of 18 other logs amounting to 5,780 feet. For these quantities the defendants had accounted to the plaintiffs.

The Judge instructed the jury that, if the defendants had used such fidelity, care and diligence to drive the logs from the bank to the boom, as prudent men use ordinarily in their own affairs, and also due diligence to preserve and secure the logs that passed through the boom, they would be liable for the logs that were scaled below the boom, by Howard, at his scale, also for logs which passed below the boom, scaled by other persons; and also for such as had not been scaled by any one below the boom, also for such as failed to come to the boom by reason of defendants' negligence and want of ordinary care, *and for no others.*

The verdict was for the defendants, and the plaintiffs excepted.

*McCrillis* and *Crosby*, for the plaintiffs.

The contract shows the logs to have been sold at $10 per thousand feet, upon the bank, though at Howard's survey, *if required.* There was a delivery and part payment before the logs were started from the bank. The defendants then took possession and control. The risk as to the driving was with them. The instruction placed the risk wholly upon the plaintiffs. This was erroneous, for the defendants were not acting as agents for the plaintiffs. They had the option whether to

drive the logs, or leave them to rot upon the bank. Suppose the Howard scale had overrun the forest scale, and the plaintiffs had claimed to recover to that extent, the defendants might reply, that the property had passed to them, when upon the bank.

There was a loss of 358 logs. The ruling of the Judge cast this loss upon the plaintiffs, unless there had been a want of ordinary care on the part of the defendants. But we submit that this was erroneous. *Barry* v. *Palmer*, 19 Maine, 303 ; *Adams* v. *Nichols*, 19 Pick. 275 ; 2 Black. Com. 488 ; *Wing* v. *Clark*, 24 Maine, 366 ; *Henry* v. *Mangles*, 1 Camp. 452; *Phillimore* v. *Barry & al.* 1 Camp. 513 ; *Harmon* v. *Anderson*, 2 Camp. 242; *Hinds* v. *Whitehouse*, 7 East, 558 ; *Rugg* v. *Minett & als.* 11 East, 211.

No notice was given by the defendants, that they required a survey by Howard. But they were bound to give such notice. It was not their right to keep silent upon that matter, to find which of the two scalings should be most favorable to them, before deciding which they would adopt. Chitty on Contracts, 733 ; *Osgood* v. *Jones*, 23 Maine, 312 ; *Lunt* v. *Padelford*, 10 Mass. 230.

*Cutting*, for the defendants.

The opinion of the Court, SHEPLEY, C. J., WELLS, RICE and HATHAWAY, J. J., was drawn up by

RICE, J. — The defendants purchased of the plaintiffs a quantity of pine mill logs, which were lying upon the bank of the east branch of the Penobscot river. The logs, before they were removed from the bank, measured, according to the scale bills introduced at the trial, five hundred and fifty-one thousand one hundred feet, board measure. On a resurvey, after they had been driven to Howard's boom, the place of destination, there was a large deficiency in the amount of timber when compared with the original survey in the woods. The plaintiffs contend that this loss occurred from a want of proper care and diligence in driving the logs, and the acci-

dental breaking of the boom in which they were lodged after they had been driven, but before the second survey.

The question at issue between the parties is, which shall sustain this alleged loss. By the terms of the contract, a survey might be had below Howard's boom if desired.

The Judge instructed the jury, that if the defendants had used such fidelity and care and diligence to drive the logs from the bank to the boom, as prudent men use, ordinarily, in their own affairs, and due diligence to preserve and secure the logs that passed through the boom, they would be liable for the logs that were scaled below the boom by Howard, at his scale; also for logs which passed below the boom scaled by other persons, and those not scaled by any one below the boom; also for logs which failed to come to the boom on account of defendants' negligence and want of ordinary care, and no others.

The plaintiffs' counsel contended that the logs were delivered on the bank, before they were driven, and that the title thereby passed to the defendants, and that consequently they were at the risk of the defendants from and after that time.

The title to the logs is not now matter of controversy, nor can that question be of any importance only as it may be supposed to bear indirectly upon the question of loss. It is no uncommon thing for property to be sold and delivered, and the quantity be ascertained at a subsequent time and place. Such was the case in *Macomber* v. *Parker*, 13 Pick. 175, and *Riddle* v. *Varnum*, 20 Pick. 280. It was undoubtedly competent for the parties to transfer the logs at one place and to determine the quantity at another.

Every practical lumberman understands that there is a wide difference between selling logs at the woods scale, and selling at a resurvey after they have been driven to market. The price, at the latter scale is always much higher than at the former. This arises from the fact that there is always incident to driving more or less depreciation and loss.

The contract, as has been seen, provides for a resurvey below Howard's boom if desired. The fact that such a survey

was desired is fully established by the acts of the parties. What then was the intention of the parties ? Manifestly that the purchaser should have the benefit of a survey after the logs had been driven.

By undertaking to drive the logs, the defendants assumed to act with due care and diligence. To this obligation they were held by the instructions of the Judge, and they were also held accountable for all losses, except such as were incidental to driving with proper care, &c. We think if either party has occasion to complain of the rule prescribed by the Court, it is not the plaintiffs.

<div align="center">

*Exceptions overruled. — Judgment on verdict.*