## J. W. RHYNAS, Appellant, v. J. H. KECK, Appellee.

**SALES:** Warranties—Implied Warranty—Quality, Fitness or Condition—Latent Disease in Animals. There is no implied warranty, in an executed contract of sale, against the existence of latent and non-discoverable disease in animals sold for human consumption, even though the vendee pays a "sound" price therefor.

**SALES:** Warranties—Implied Warranties—Principles. On the subject of implied warranties, the following principles are recognized:

1. Acceptance, delivery and payment do not operate as a waiver of an implied warranty.

2. There is no implied warranty of soundness when unsoundness is hidden, is difficult to discover, and is unknown to the vendor.

3. A vendee who might have inspected and did not may not complain when such inspection would have revealed the defect.

4. Lack of opportunity to inspect, or failure to inspect when opportunity is presented, is immaterial when such inspection would not have revealed the defect.

5. No implied warranty goes beyond the time of delivery.

6. The weight of authority is against the doctrine of the civil law that "A sound price warrants a sound commodity."

**EVIDENCE:** Judicial Notice—Method of Shipping Stock. The courts will take judicial notice that, in many instances, animals purchased of one person are, in shipping, intermingled with stock bought of other persons.

**EVIDENCE:** Judicial Notice—"Sound Price." Courts will not take judicial notice of what constitutes a "sound" price for hogs, especially in a given locality and on a given day.

**SALES:** Operation and Effect—Executed Sales and Passing of Title. An agreement by a vendor to sell and by vendee to buy 28 existing hogs, averaging about 120 pounds, and at a stated price, is a completed—an executed—sale.

**SALES:** Nature of Contract—Executed or Executory—Conditions. Whether a contract of sale is executed or executory depends

fundamentally on the intent of the parties. If parties actually intend to fully execute the contract, such intent controls, even though "something remains to be done," viz., delivery.

*Appeal from Van Buren District Court.*—D. M. ANDERSON, Judge.

MONDAY, FEBRUARY 19, 1917.

THE petition declares that damages are due because, upon the matters alleged, defendant should be charged with and to have breached an implied warranty that hogs sold by him were fit for the use he knew plaintiff would put them to. From sustaining a demurrer to this petition, plaintiff appeals.—*Affirmed.*

*Starr & Jordan,* for appellant.

*Work & Irish,* for appellee.

1. SALES: warranties: implied warranty: quality, fitness or condition: latent disease in animals.

SALINGER, J.—I. The second count of a second amendment to petition to which demurrer was sustained discloses this:

On the 26th of September, 1913, defendant contracted with plaintiff to sell and deliver to plaintiff, at Stockport, 28 head of hogs, to average about 120 pounds. The price was agreed to, and the hogs were to be weighed, paid for and delivered. Plaintiff did not see the hogs, and had no opportunity to see and examine same before delivery. At the time of the delivery, he had no opportunity to examine to ascertain if the hogs were diseased, and when they were weighed and turned into the stock pens, there was nothing about their appearance to indicate, "on the slight examination that was or could be made of them at that time," that they were diseased.

There are allegations, in effect, that defendant knew that plaintiff was buying the hogs for human consumption, and to be shipped to a named packing house at Ottumwa, Iowa, there to be slaughtered and prepared for meat for such consumption.

It is true that, in the first count of the first amended and substituted petition, there is an allegation that plaintiff was not aware the hogs were infected with the germs of hog cholera. But we do not find such an allegation in any Count 2, including the original one to which another demurrer was sustained, a ruling not complained of on this appeal.

There are allegations, in the nature of legal conclusions, that defendant, by selling the hogs with knowledge of what plaintiff intended to do with them, impliedly warranted the hogs to be reasonably fit for the purpose for which he knew plaintiff was buying them; and that there was a breach of warranty at the time of the sale to plaintiff, in that the hogs were not reasonably fit for such purpose, on account of having a contagious disease; all to his damage, by being compelled to sell the same for less than he would have obtained had they been free from such disease.

It may be said now, for whatever bearing it has on the ultimate decision, that, on the trial upon Count 1, the jury found specially that defendant did not know, when he sold the hogs, that they were infected with a contagious disease.

The demurrer asserts: (1) There was no implied warranty against any disease in hogs, much less one against latent disease; (2) there is no allegation that defendant had knowledge of any disease; (3) there is no allegation that the contract of the sale was an executory contract. This demurrer was sustained; hence this appeal.

In argument, we are told that the error complained of is holding that there was no implied warranty of the condition of the hogs that they were free from disease and fit for the purposes for which defendant knew plaintiff was buying them; that the sole question presented by the appeal is whether, in the absence of inspection on part of the buyer, there was an implied warranty that the hogs were

free from latent defects that would render them unfit for the purpose for which defendant knew plaintiff was buying them.

II. It is urged that, if we hold here

2. SALES. warranties: implied warranties: principles.

was no implied warranty, it must be on the theory that acceptance and payment operated to waive an implied warranty. And it is rightly claimed that *Babcock v. Trice,* 18 Ill. 420, *Checkrower v. Bradley,* 105 Iowa 537, at 547, hold that acceptance and delivery do not constitute such waiver. Our own investigation has found cases in Georgia, Maine, Massachusetts, Missouri, North Carolina and elsewhere, to the like effect. We may add that such is the holding also of *Kohl v. Lindley,* 39 Ill. 195. Using these before it is found that there was an implied warranty is a begging of the question. That certain things do or do not operate to waive a warranty does not prove that one existed.

III. It is part of the rule, rather than an exception to it, that there is no implied warranty of quality if the goods may be inspected by the buyer, and the demurrer admits the hogs did not appear to be diseased "on the slight examination that was or could be made." The cases do attach importance to lack of opportunity to inspect—upon which, and upon the inadequacy of such inspection as was or could be made, appellant argues that, even under the general rule, an implied warranty of fitness and merchantability arises. If that be sound, the rule that there is ordinarily no such warranty as to latent defects would be operative only under conditions which never exist. The rule is, in effect, that there is no implied warranty of soundness where unsoundness is hidden, is unknown to the seller, and difficult to discover. The rule exists *because* the discovery is difficult. Appellant's construction of it is that it does not operate *when* discovery is difficult. We think the element of opportunity to inspect amounts to just this: If there be oppor-

tunity to make an inspection which, if made, will discover
defects, and none is made, the buyer may not complain. If
the seller prevents, he warrants against what was not dis-
covered. If inspection would have been ineffective, though
made, lack of opportunity or failure to make it is not ma-
terial. *Hyatt v. Boyle,* (Md.) 25 Am. Dec. 276, is illumina-
tive. It holds that failure to inspect is material only where
inspection is not made, say, when a sale is made before the
goods have arrived.

Related is the argument that, if a warranty be not im-
plied in the case at bar, the buyer will or may suffer great
hardship. That is to say, a general buyer of live stock
can hardly find time or adequate opportunity, even if he had
the skill, to make such examination, either at the time of
buying or before accepting and paying, as would develop
that latent disease was present. It is a ready answer that
the owners of stock must sell to someone, and that, if buy-
ers came to an understanding that they would not buy live
stock likely to have latent diseases unless the seller gave
express warranty, the question we now have would cease
to be a possible one. If this be a cogent argument for the
appellant, something can be said on the hardship to the
seller. When and just before the seller here sold or de-
livered, no inspection on his part would in reason have de-
veloped that latent hog cholera was present; and he has no
way of showing whether it was then present or not. He de-
livered 28 head. The buyer took control and shipped them,
and it transpired that, out of the 28, but 21 developed the
disease.

3. EVIDENCE: judi-
cial notice:
method of ship-
ping stock.
We may take judicial notice that, in
many cases, hogs bought from one seller
would, for the purpose of being shipped to
the packing house, be by the buyer put into cars with those
purchased of other sellers. And that only a part of those
sold here developed the disease tends to indicate either the

remarkable theory that only 21 out of 28 hogs kept together on one farm had the disease latently, or that the hogs sold were separated, and part shipped with others that were in condition to communicate the disease. There is no way appellee can demonstrate which is the fact, if, indeed, there is any way of doing so. And the theory of the appellant would put the seller in the position of turning over property apparently sound, having the buyer handle it in his own way, innocently mix it with diseased animals, and then assert, when it later develops that part of the hogs sold have cholera, that the seller must pay him his loss.

It is said that, as this was latent disease, appellant could not discover it by ordinary inspection. The same difficulty confronts the seller. And it has been held as to flour, concerning which it could not be shown by an inspection that it was of grown wheat, the fact that it is difficult to ascertain this upon inspection does not make it result that there is a warranty by implication (*Hart v. Wright,* 17 Wend. [N. Y.] 267); and somewhat bearing upon the same thought is *Salisbury v. Stainer,* 19 Wend. (N. Y.) 159. And this part of the controversy is, in a sense, within the rule that no warranty goes beyond the time of delivery, and no implied warranty is that the perishable property sold will continue sound for a definite period, or any period after delivery. See *Bull v. Robison,* 10 Exch. (1854) 342; *Cushman v. Holyoke,* 34 Me. 289; *Mann v. Everston,* 32 Ind. 355; *Leopold v. Van Kirk,* 27 Wis. 152.

IV. Cases too numerous to cite declare this to be the rule applicable to this case: If goods which are the subject of sale are in existence and may be inspected by the buyer, and there is no fraud on part of the seller, the maxim *"caveat emptor"* applies, even though the defects are latent and not discoverable upon examination. We say, in *McClung v. Kelley,* 21 Iowa 508, that, as to a completed contract:

"It is a general rule that, unless there has been a warranty, false representation or fraudulent concealment, the purchaser must take the property regardless of its defects, and the seller is without liability therefor."

The appellant must prevail, if at all, by invoking some exception to the rule. We have been led into an examination, with result that we find that some things that were once exceptions are not such now, and that others are exceptions that have no place in this case. The examination has profited us little, beyond making clear what we need not consider. 12 cases hold that such warranty as plaintiff asserts is implied as to a manufacturer of machinery, if he knows the purpose to which his machine is to be devoted; 6, that there is not such warranty, even though the sale be an executed one. From this holding, 5 cases dissent. 7 hold that there is such warranty *if* the manufacturer is also the seller. 2 declare it is not implied *unless* the one charged with it is both maker and seller. In *Matthews v. Hartson,* 3 Pittsb. 86, it is held that a seller of his own manufactured articles is held to no higher obligation than one who is the vendor of goods made by another. And *Hoe v. Sanborn,* 21 N. Y. 552, decides that, while there is an implied warranty against latent defects growing out of the process of manufacture, there is none against latent defects in the materials employed. A large number inject into sales by the manufacturer other elements, which we consider elsewhere. But all said in all these cases has being a manufacturer of machinery, or being both maker and seller, as its vital predicate. This seller and hogs are not within the exception which these cases affirm or deny.

### 4-a

Many cases make an exception where to the seller is left the selecting to meet the known purpose, or the description under which the article is sold. *Omaha Coal,*

*Coke & Lime Co. v. Fay,* (Neb.) 55 N. W. 211, is largely con-
trolled by finding that there was an express warranty.

In *Moore v. Koger,* (Mo.) 87 S. W. 602, at 604, the Kan-
sas City Court of Appeals, dealing with a sale of millet
sold by the grower for seed, sustains an implied warranty
of fitness for that purpose. It is said in one place that
"even want of knowledge of such defects will not relieve
him." In another, the court sustains itself by the statement
that "the seller is not permitted to take unfair advantage
from his knowledge;" in still another, that a warranty will
be implied when there is a representation of soundness.
Effect is given to the payment of a sound price. The case
seems to involve also fraud and deceit, express warranty,
and a breach of agreement to clean the seed. And the sale
appears to have been executory.

*White v. Miller,* 7 Hun (N. Y.) 427, as finally disposed
of in the court of appeals, is said to be within the rule of
*Hoe v. Sanborn,* supra, and, therefore, is a holding that,
where defendant has grown seed, there is an implied war-
ranty that the same is free from latent defects arising from
the mode of cultivation.

*Burnett v. Hensley,* 118 Iowa 575, has elements of dif-
ferentiation from the theory of each of the parties in this
case, and can be applied by detachment to aid either party.
As a whole, it is of little use to either.

Unless this was an executory sale, or the appellant is
aided by having paid a sound price, nothing discussed in
this division gives appellant the benefit of any exception
to the general rule, which is against him.

### 4-b

Where machinery is sold with a particular descrip-
tion, and there is no opportunity to inspect, there is such
warranty as plaintiff asserts. *Timken v. Smith,* 123 Iowa
554. As to articles not machinery, there is implied a war-

ranty that an article sold with a specific description meets such description. For illustration: Where vitriol was sold as being "Blue vitriol, sound and in good order" (*Hawkins v. Pemberton,* 51 N. Y. 198); a description, "No 2, white mixed corn bulk" (*Miller v. Moore* [Ga.], 10 S. E. 360). Many cases so hold as to specific descriptions made in executory sales. They do not control here, unless we shall find when we reach that point that the sale here is executory. If we shall so find, these cases are not material, because the warranty which plaintiff asserts exists on executory sales, whether there be or be not a specific description.

4-c

It was the rule of the civil law that paying of a sound price raises an implied warranty that the article sold is what it appears to be, sound and of a merchantable quality; that "a sound price warrants a sound commodity," the seller taking the risk of all defects which are not disclosed at the time of the sale. Before Lord Mansfield's time, this was understood to be the rule of the common law also. But ever since his opinion in 1778, in *Stuart v. Wilkins,* 1 Doug. 17, 20, the rule therein laid down that the vendor was not responsible for any defects unless he was guilty of fraud, or had given an express warranty, has been accepted as the rule of the common law. See *Kohl v. Lindley,* 39 Ill. 202. And it is said now to be "the general rule that in a sale of goods, although for a fair price, there is no implied warranty of quality or soundness, or that the mass of goods is of uniform quality throughout, the law presuming that a buyer who fails to exact an express warranty relies on his own judgment." See 35 Cyc. 397. The text is supported by numerous cases in Alabama, Connecticut, Illinois, Indiana, Kentucky, Maryland, Massachusetts, Missouri, New Jersey, New York, North Carolina, Ohio, Pennsylvania, Rhode Island, Texas, Vermont, Virginia, and in the United

States Supreme Court. Only decisions in the state of South Carolina seem to run counter.

The sound price doctrine has been quite generally discredited. *West v. Cunningham,* 9 Port. (Ala.) 104, 108 (33 Am. Dec. 300); *Dean v. Mason,* 4 Conn. 428; *Court v. Snyder,* (Ind.) 28 N. E. 718; *Johnston v. Cope,* 3 Har. & J. (Md.) 89 (5 Am. Dec. 423); *Mixer v. Coburn,* 52 Mass. 559; *Beninger v. Corwin,* 24 N. J. L. 257; *Holden v. Dakin,* 4 Johns. (N. Y.) 421; *Weimer v. Clement,* 37 Pa. St. 147; *King v. Quidnick,* 14 R. I. 131; *McKinney v. Fort,* 10 Tex. 220; *Mason v. Chappell,* 15 Gratt. (Va.) 572.

Though there are strong intimations in some of the decided cases to the contrary, we think the great weight of authority is against said maxim of the civil law. See *Moore v. Koger,* (Kansas City Court of Appeals) 87 S. W. 603; *Lindsay v. Davis,* 30 Mo. 406, 409.

The nearest we have ever come to speaking to the point is in the early case of *Johnson v. Barney,* 1 Iowa 531, which seems not to have since been touched or referred to, and which holds that, where discount is more than the usual exchange for currency, this is proper evidence to be considered by the jury as tending to show that defendants bought bank bills at their own risk. The most this case does is to make it a circumstance that a thing is bought at a suspiciously cheap price. It is not authority for holding that there is an implied warranty of merchantability if less than a sound price be paid; and if it so ruled, it is against the overwhelming weight of authority at the time when decided, and now.

It is proper to add that it is, at the least, very doubtful whether there is any allegation, and, therefore, an admission by demurrer, that a sound price was paid. It is alleged what price was paid. But we do not take judicial notice of what constitutes a sound price for hogs. In

4. EVIDENCE: judicial notice: "sound price."

no view could we take judicial notice of what was a sound price for hogs sold in a particular locality on a given day.

V. In the last analysis, appellant is driven to claim that the sale at bar was executory only. If that be so, there is the implied warranty upon which he has declared. Most of his citations and what these have led us to, deal with that class of sale, or with contracts to sell. And all they hold rests upon this fact. And he says that "this was an executory sale without question, though appellee contended below that it was not. Their contention there was that, when the hogs were delivered, it became an executed sale."

5. SALES: operation and effect: executed sales and passing of title.

Was it an executory sale? On whether this was an executed or an executory sale, we have made an extensive investigation, and find that whether a sale is one or the other is usually determined by the intent, as evolved from all the attending and surrounding circumstances; that that intent, once legitimately arrived at, is controlling, though there be circumstances which are often found to be present in both executory contracts to sell and executed sales. It is, however, true, as held in *Sempel v. Northern Hardwood Lbr. Co.,* 142 Iowa 586, and *Buskirk v. Peck,* (W. Va.) 50 S. E. 432, that the intention may be so plainly displayed as that whether there be an executed sale or merely a contract to sell becomes a question of law.

6. SALES: nature of contract: executed or executory: conditions.

Thus it has been held that, while it may be a circumstance of great weight whether or not something is yet to be done which is of such character as to indicate that its doing is a condition precedent to change of title, yet the fact that there are certain things to be done may not be controlling. See *Welch v. Spies,* 103 Iowa 389; *Hatch v. Standard Oil Co.,* 100 U. S. 124; *United States v. Woodruff (The Elgee Cotton Cases),* 22 Wall. (U. S.) 180; *O'Keefe v. Kel-*

*logg,* 15 Ill. 347, at 352; *Kohl v. Lindley,* 39 Ill. 195; *Priest v. Hodges,* (Ark.) 118 S. W. 253; *Fagan v. Faulkner,* 5 Ark. 161, and *Chamblee v. McKenzie,* 31 Ark. 155. In them is found, taking them all together, quite an exposition of when the fact that something is still to be done is or is not probative of sale or contract to sell, respectively. See also *Barber v. Andrews,* (R. I.) 69 Atl. 1. In this last, the distinction is drawn that an executory sale conveys merely a chose in action, while the other involves a chose in possession. And in *Forcheimer v. Stewart,* 65 Iowa 593, 599, it is said that the contract becomes "an executed sale upon delivery." In view of all that the case involves, we take this to be a holding that, under the conditions there present, delivery does create an executed sale. It can hardly mean more than is held in *Sempel v. Northern Hardwood Lbr. Co.,* 142 Iowa, at 591, which is that, while ordinarily actual delivery is essential, this is not a universal requisite to a completed sale. The same is held in *Lester v. East,* 49 Ind. 588, and *Kohl v. Lindley,* 39 Ill. 195.

*Sempel v. Northern Hardware Lbr. Co.,* 142 Iowa, at 591, lays great stress upon its being a test that to make an executed sale the specific goods or property must be definitely ascertained and agreed upon; and it is said that, if this much is done, other things, even quantity, may be left to subsequent ascertainment, without making the transaction less than a completed sale. The case also says that, where the subject of sale is ready for delivery, the title may pass when that is the obvious intention, though the quantity is yet to be determined as a basis for computing the price.

Cases utterly too numerous to mention, and collected in Note 10 to *Barber v. Andrews,* page 15 of 26 L. R. A. (N. S.), declare it is essential to an executed sale that the thing sold be identified, and that a contract of purchase and sale is executory as long as anything still remains to be done to identify the particular property which is the subject of such contract.

The test in *United States v. Woodruff (The Elgee Cotton Cases)*, 22 Wall. (U. S.) 180, is that when, by the agreement, the vendor is to do anything to the goods for the purpose of putting them into that state in which the purchaser is bound to accept them, or, as it is sometimes worded, into a deliverable state, the performance of those things shall, in the absence of circumstances indicating a contrary intention, be taken to be a condition precedent to the vesting of the property. And in *Hatch v. Standard Oil Co.*, 100 U. S. 124, that a contract is deemed a bargain and sale when by its terms the property sold passes immediately from seller to buyer, and it is executory when the property in the state sold is to remain for a time in the seller, and to pass to the buyer only at a future time or on conditions inconsistent with its immediate transfer.

It comes to this: In essence, the distinction between the two rests on the thought that there is to be done or may happen in the time between sale and delivery what varies the goods sold from those delivered, or causes them to be other than what was negotiated for. This excludes the theory that mere lapse of time between sale and delivery negatives a completed sale. The tests discussed are means of making the supreme test: What did the parties intend? When some things are yet to be done, it may be held, as matter of law, that title was not intended to pass presently. Though things other than those remain undone, it may be matter of law that title has passed notwithstanding. We are of opinion that here nothing remained to be done the postponing of which delays the change of title.

This plaintiff bought 28 head of hogs. It does not appear whether this was all or but a part of what hogs the seller had. The only attempt to specify was that there should be that number, and that they should have a certain average weight. There is no claim that they failed of thus averaging. There was nothing to ascertain. A definite

thing was covered by the negotiations. The price was settled. There were no words of description, beyond the fact that hogs were being sold, how many, and their average weight. Now it is true that physical delivery at Stockport was not made on the instant the negotiations were concluded. But nothing other than payment upon weighing and a physical change of location was left to be done. What process of selection was left to the seller—what existed to defer an executed sale—until the goods got to the depot and were weighed and paid for? Why was there not an executed sale as much before that as at the time of physical delivery and weighing and payment? If, between the time the negotiations were closed and this taking to Stockport, there was nothing but an unexecuted contract to sell, it must be because of the few hours that intervened between the closing of the proposal to sell and acceptance thereof, and the physical placing of the property under the control of the buyer, and we have seen that naked lapse of time before actual delivery is not at all controlling.

If these conditions made a mere contract to sell, or a mere executory sale, innumerable transactions which are universally deemed a completed sale are for a time a mere executory contract to sell. This means that there is no foundation upon which to build the well-marked distinction between the two; for on that reasoning every transaction which ends in a buying would for some time be no more than an executory contract to sell. Every transaction that involves buying and selling would be for a time subject to all the rules that govern most executory contracts to sell. On that reasoning, if this buyer had gone upon the farm of the seller, looked at one hog, asked its price, agreed to the price, and said that he would buy, should that hog escape and pursuit be made for the purpose of delivering it to the purchaser, which consumed two or three hours, during that time there would be nothing but an executory agreement

for purchase and sale. And if it were found the buyer had a large profit, an attachment by a creditor of the seller, levied just when the hog was caught, and before it was physically turned over, would take the title, and with it the profit from the buyer. If the seller had been asked by the assessor just before delivery how many hogs he owned, would he have listed these 28? If the buyer had been asked just before delivery how many hogs owned by him would be shipped by him that day, would he have excluded these 28?

We are of opinion that, as matter of law, the sale here was not one on which the warranty asserted is raised by implication. Wherefore, the judgment below must be— *Affirmed.*

GAYNOR, C. J., LADD and EVANS, JJ., concur.