AUGUSTA COOPERAGE COMPANY *v*. PLANT.

Opinion delivered February 18, 1924.

1. FRAUDS, STATUTE OF—SALE OF GOODS—DELIVERY.—The general rule is, when something remains to be done, as between vendor and vendee of personal property, for the purpose of ascertaining either quantity or price of articles, there is no such delivery as passes the title.

2. FRAUDS, STATUTE OF—SALE OF GOODS—DELIVERY.—Where it clearly appears that it was the intention of the parties that it should be deemed and considered that the property has been delivered and the ownership of the property has been abandoned by the one and accepted by the other, and the title has actually passed, then such intention will govern, although there remains something to be done to determine the total quantity or value of the article.

3. FRAUDS, STATUTE OF—JURY QUESTION.—Where there is any act from which it can be inferred that the seller has delivered and the buyer has actually taken possession of personal property with intention of seller to deliver and of buyer to accept and actually receive same, the issue whether the oral contract of sale is taken out of the statute is for the jury.

4. FRAUDS, STATUTE OF—JURY QUESTION.—Where there are no acts from which it can be inferred that there was an intention on the seller's part to deliver and on the buyer's part to receive a part or all of the property orally sold, the court should declare the contract within the statute of frauds.

5. FRAUDS, STATUTE OF—JURY QUESTION.—In an action on an alleged oral contract of sale of timber, whether the contract was made, and whether it was taken out of the statute (Crawford & Moses' Dig., § 4864) by delivery and acceptance, *held* for the jury.

6. PLEADING—AMENDMENT.—In an action for failure to pay for logs claimed to have been delivered under an oral contract, there was no error in allowing the complaint to be amended at the trial

to conform to the testimony as to the kind of logs the buyer was to get, and refusal of a continuance after such amendment was not an abuse of discretion, where the amendment did not change the nature of the cause of action, and no ground of surprise or prejudice was shown by the defendant.

7. Appeal and error—Conclusiveness of verdict.—Where the instructions as a whole were harmonious and fully and fairly submitted the issue of fact to the jury, and the verdict was supported by substantial testimony, the Supreme Court will not disturb it.

Appeal from White Circuit Court; *W. D. Davenport,* special judge; affirmed.

*Geo. B. Webster* and *J. F. Summers,* for appellant.

1. If appellee's case can escape the statute of frauds, C. & M. Digest, § 4864, it can only do so by virtue of the second clause, viz: the acceptance and actual receipt of a part of the logs alleged to have been sold. Yet nowhere in the record can there be found any evidence satisfactory to the judicial mind of either receipt or acceptance by the appellant. No statement of Massey's, unaccompanied by action on his part, could operate to satisfy the statute. 124 U. S. 52. Under the statute both an acceptance and a receipt are necessary; neither, taken alone, is sufficient. The purchaser must have actually received unfettered dominion and control; there must have been a transfer of possession, either actually, by manual delivery, symbolically, by some substituted delivery, or constructively by a change in the nature of the seller's dominion over the property. 5 Ark. 161; 27 Corp. Juris, 242; 10 Utah 31, 36 Pac. 132; 116 Ga. 1; 43 S. E. 466. There was no dispute over the facts relied on by appellee to prove receipt and acceptance. It therefore became a question of law which the court should have ruled upon as requested by the appellant. 124 U. S. 48. Independently of the statute of frauds, there was no sale, for there was no delivery. 102 Ark. 621; 100 Ark. 510.

2. The court erred in overruling appellant's motion for continuance, after permitting the amendment of the complaint. Amendments are not permissible when they

change the cause of action.  59 Ark. 105; 75 Ark. 465; 67 Ark. 142; 71 Ark. 222.

*John E. Miller* and *C. E. Yingling,* for appellee.

1.  Appellant's contentions that the testimony does not take the contract out of the operation of the statute of frauds, and also that the number of feet of logs was not sufficiently proved by the testimony, both questions having been submitted to the jury under proper instructions, are settled contrary to such contentions by their verdict.  *Fagan* v. *Bourland,* 5 Ark. 161, and other cases cited by appellant, do not preclude a recovery by appellant.  In determining whether a party has accepted the goods or a part of them and has actually received them, in whole or in part, the intention of the parties and all the circumstances should be taken into consideration.  90 Ark. 131-133; 31 Ark. 155; 37 Ark. 483; 54 Ark. 305; 62 Ark. 592.  See also 149 Ark. 318; 124 U. S. 38, 8 Sup. Ct. Rep. 369; 35 Ark. 190; 25 R. C. L. 627, § 246; 27 C. J., § 273.  Whether there has been such an acceptance or a receipt of the goods or a part of them by the buyer, under a verbal contract of sale, as will satisfy the statute of frauds and make the buyer liable, is a jury question.  39 Mo. 192; 53 N. H. 605; 71 N. Y. 295; 57 Wis. 358; 15 N. W. 442.  Any acts from which it may be inferred that the buyer has taken possession of the goods purchased as owner, present a question for the jury to determine whether the acts were done with the intention to accept, and thus take the case out of the statute.  35 Ark. 190; 10 N. Y. 285; 120 N. Y. 213; 24 N. E. 279; 89 Wis. 86; 61 N. W. 307.

2.  Appellant saved exceptions only to the action of the court in permitting the amendment, not to its action in refusing a continuance.  There was no error, no abuse of discretion, in denying the motion to continue.  93 Ark. 119, 123, and cases cited; 94 Ark. 430.  Cases will be reversed only for prejudicial error.  112 Ark. 507; 137 Ark. 387; 88 Ark. 185, and cases cited; 113 Ark. 83; 152 Ark. 540.

WOOD, J.   The appellee instituted this action against the appellant to recover damages for an alleged failure to comply with an oral contract.   Appellee alleged that, on or about March 1, 1922, appellant entered into a contract with the appellee to purchase all stave timber which the appellee could cut and remove to the bank of White River, in White County, Arkansas, during the year 1922, from the lands located in what is called "Shadden Bend." That appellee agreed to pay therefor $10 per M for all logs which would grade No. 1 and $7 per M for all logs which would grade No. 2; that, in compliance with the contract, appellee cut and removed to the bank of White River, at the place agreed upon, 93,750 feet of first grade stave logs and 31,250 feet of second grade stave logs, of the aggregate value of $1,156.25, for which appellee prayed judgment.

The appellant, in its answer, denied all the material allegations of the complaint, and alleged that the contract, if made, was void under the statute of frauds.

The appellee testified that he had been engaged in the timber business about five years.   Some time in December, 1921, he entered into a contract with one Massey, the agent of appellant, for the sale of his timber.   The appellant objected to the testimony because the complaint alleged this contract was made about March 1, 1922.   The court overruled his objection, and the witness continued his testimony, stating that he talked to Massey the first time in December, and then about the first of the year, and later, and some time after the first of the year, they entered into the contract, whereby the appellant agreed to buy appellee's stave stuff.   Here the appellant objected to any proof pertaining to any logs other than No. 1 and No. 2, as alleged in the complaint.   The court overruled the objection, and the witness continued.   Massey stated that they were buying the logs for staves, and cautioned the witness about cutting them in multiples of 32 inches. They were to take five times the length of 32-inch blocks. The timber was located in Shadden Bend, and the logs

were to be delivered on the bank of the river, on as high ground as possible as they could be conveniently placed, so that the appellant's rafters could roll them into the river. Massey was to grade them, and to pay $10 per M for No. 1 and $7 per M for No. 2 stave logs. Witness had been furnishing logs to Wilkerson, who represented a veneer plant at Des Arc and was paying appellee $19 per M for logs on the bank. There were some logs left that Wilkerson did not take. These were on the lower yard, down the river. Massey agreed to scale and take those. He scaled some elm, and said he would scale the other when witness got it out. Witness commenced after the first of the year. He agreed to get out the timber, and agreed to put out the remainder of it that year, delivered the spring of 1922. Witness estimated that he put out 125,000 feet, and a few hundred feet over that was delivered, 1,030 logs—93,000 and some odd feet of No. 1— and the remainder No. 2. The appellant never paid anything, and owed for all these logs. Massey said they had all the stuff, and they were not going to take it. Massey was on the yard while appellee's men were cutting and delivering the logs. He looked at the logs, and cautioned the witness about putting the logs on high ground and keeping them from behind trees, so that his rafters could roll them into the river. Massey knew about the character of the timber on that tract of land. He had gone over and tried to buy it before witness bought it, and then bought from witness the next year. Witness was operating only one log job in Shadden Bend. He had several different yards. Witness arrived at the number of feet by going to the log piles and scaling some of the small, medium and large logs, and in this manner arriving at the average per log, and then multiplied that by the number of logs. Witness never sold logs to any one before measuring that way, and he tried to get Massey to scale the logs. Witness did not go by checking off and marking each log, but he could make the estimate by looking at the logs, and considering the number of

knots, and whether they were shaky or rotten or split logs. Witness had a man to help him make the estimate. Witness saw Massey at Newport, with Captain Huff and Mr. Buchanan. Witness didn't ask Massey, on that occasion, if he was in the market for logs, and didn't remember Massey saying that witness didn't have anything he wanted. Witness sold some logs to Wilkerson in the fall of 1921. Witness was asked the following question: "Now, when you made this sale of logs to Mr. Wilkerson, what did you tell Mr. Wilkerson as to what he was to get?" Here appellee's counsel asked leave to amend the complaint by inserting the words "stave timber," which the court permitted, over the objection of appellant. Counsel for appellant stated that it was not prepared to make defense to such amendment, and asked the court to continue the cause that it might prepare its defense. This motion was overruled.

The witness, continuing, stated that he sold Massey all the stave timber he put off that place in 1920 and 1921. Massey took up some elm timber under this contract. Witness didn't remember the date. York, witness' foreman, kept up with the scaling. Witness received a check for the elm.

York testified that he was the foreman of the appellee in the winter and spring of 1922, cutting timber in Shadden Bend. He had a conversation with Massey, appellant's log buyer and scaler. Witness didn't know personally about the terms of the contract between appellee and appellant. After witness learned about the contract, Massey gave him directions about cutting the stave timber. They were there on what they called the gum yard at the river. Massey told witness that he would take the elm and cottonwood and some small sycamore, and to cut it in multiples of 32 inches, that is, make the log long enough to multiply into 32-inch length, to avoid waste. Massey told witness how to pile the logs. This was while he was on what is called the cottonwood yard. A few logs had been put in behind trees and scattered about,

and Massey told witness they would have to be piled up before he would scale them, and told witness how to pile them. Witness took appellee's teams and skidded them, and loaded some on the wagons, and put them up to the pile. This was done at Massey's request. Massey passed along the river in his boat, and told witness about the condition of the logs on another yard in Shadden Bend. He told the witness to go down there and put them in shape, so that his rafters could get them into the river. In rafting logs they cut what they called binders (long poles) to hold them together. Massey told witness to get out hickory, oak and ash binders for these logs in Shadden Bend. The logs at that time were on the yard, and were the logs in controversy. Witness put out the binders like Massey directed. Massey was there on the yard, and there was nothing to prevent him from seeing the logs and knowing the kind of logs they were when he told witness to take the teams and rick them up. Witness measured the number of feet that were delivered on the yards for Massey, and corroborated the testimony of the appellee as to how this was done, saying, "We scaled a few logs in each pile—maybe a third, and sometimes a half in a pile, and sometimes not that many." They didn't have time to go through a scale of the logs, and were not trying to get the exact number of feet, but were trying to get somewhere in the neighborhood of it. According to witness' estimate there were somewhere about 125,000 or 130,000 feet. There were between 85,000 and 90,000 feet of No. 1 stave logs, and the remainder were No. 2 stave logs. Witness had been in the log business for 12 or 14 years. The logs would run from 11 to 16½ feet in length. Witness used two teams in repiling the logs, under Massey's direction to pile the logs in good shape so that he could get to them to scale them.

Witness stated that a veneer log had to be a certain size. No. 1 had to be clear of shakes and knots. Two knots will make a No. 2. At the time Massey gave directions about the binders there were on the yard to be rafted

only what they called the stave logs, and these did not need any binders, unless they were to be rafted.

Another witness, who was hauling logs for appellee in February and March, stated that he saw Massey on the yards twice, looking at the logs. He asked witness where appellee was and where York was, and said to witness that he would like to have some logs moved and some binders got out. He wanted the logs where he could roll them into the river. He had reference to the stave logs that were right there. All the logs that were there. Massey said a few of these logs were rougher than he wanted. They were back where they had been rolled out of the veneer pile. Another time, about a week or ten days after the above conversation, Massey was at the yard again, looking for the appellee. Massey then stated he had come there to scale the logs, and that he would like to see the appellee. Witness told him that he was going over where the appellee was, and would tell him, and appellee hurried right back there. Witness supposed that Massey was going to scale the stave logs. Those were all that were there, except a little hickory, and Massey could not use that. Witness saw Massey again, about the first of May, in Bald Knob, and asked him why he didn't scale those logs, and he replied "The reason I didn't scale them, Plant let some big cottonwood go out that he wanted that he didn't get."

Two other witnesses testified for the appellee, to the effect that they saw Massey on the yards while they were getting out timber. One of the witnesses stated that he saw Massey in a conversation with York, appellee's foreman, and, after Massey left, witness received instructions as to how to cut the timber. The timber was stave timber, and cut in multiples of 32 inches, 11½, 13 and 16½ feet long.

Wilkerson testified for the appellant, to the effect that he purchased from the appellee, from Shadden Bend, 260,000 feet of timber, beginning December 15, 1921, and the last scale was made some time in February, 1922.

Witness purchased such logs as he could use for veneer. He took all the clear logs, 16 inches and up, and a few less than 16 inches. Witness took all the No. 1 oak and cottonwood that appellee had up to the time witness quit. Witness saw Massey on the yard one time about December 15. He scaled some logs there. Massey and witness had a conversation, and, after the conversation, Massey scaled the logs. Witness bought only gum and very little cottonwood in ten, twelve, fourteen, sixteen and eighteen-foot lengths. The size, cut and purpose for which the logs were to be used governed the price. Witness was asked if he knew the difference in the sizes of logs used for staves and the size used for veneer, and answered, "We use 16-inch and up—sometimes we get smaller logs." He was further asked, "Do they use in the manufacture of staves logs you cannot use in a veneer mill?" and answered, "Yes sir, they do."

Massey testified to the effect that he bought some logs from the appellee in 1922, but made no contract with him for future delivery of logs from Shadden Bend. He looked at appellee's logs, and they were cull logs. He testified to a conversation he had with appellee, in the spring of 1922, when Captain Huff and Mr. Buchanan were present, in which appellee asked witness if he was buying logs, and if he would make a scale of appellee's logs. Witness told appellee that it was no use, as he had culled them out and sold them to Wilkerson. He denied the testimony of appellee's witnesses to the effect that he had directed the piling of the logs. Witness supposed there were 35,000 feet on all the yards. Appellee had no No. 1 logs.

Witnesses Huff and Buchanan corroborated the testimony of appellant as to the conversation appellant testified had occurred between him and appellee. There was other testimony corroborating the testimony of appellant to the effect that he didn't purchase appellee's logs because there was nothing on appellee's yards that he wanted. Witnesses testified to the effect that a No. 1

stave log would be clear. To make a profitable business one would want clear logs to make staves, the same as lumber or veneer. There was no distinction between them.

The court, in instruction No. 1, given at the instance of the appellee, told the jury, in effect, that, if the appellant agreed to purchase from the appellee all the merchantable stave timber in Shadden Bend, during the winter and spring of 1922, at the prices specified in the complaint, and the appellee agreed to cut and deliver all such timber, and complied with his contract, they should find in his favor, unless they found that the contract was within the statute of frauds, to be defined by the court.

In instruction No. 2 the court told the jury that, if there was an agreement of sale and purchase between appellee and appellant, as defined in the first instruction, and if the appellee delivered the logs pursuant to the contract, and if the appellant actually received the logs, or a part of them, into its possession, and controlled and accepted them, or a part of them, then the statute of frauds could not avail the appellant, and the verdict should be for the appellee.

At the request of the appellant the court instructed the jury that, if they should find appellant and appellee entered into a contract as alleged in the complaint, unless the appellee was obligated to furnish what logs he cut to the appellant, the contract would lack mutuality; and, if they should so find, their verdict should be for the appellant.

The court also instructed the jury that, unless the quantity of the logs could be reasonably ascertained or approximated, they should find for the appellant. Appellant's prayer for instruction No. 6 is as follows: "If you find that defendant contracted with plaintiff, and that plaintiff cut logs Nos. 1 and 2, you are instructed that defendant had the right to expect and demand all the logs cut and hauled to White River by plaintiff, and if

you find that plaintiff, without giving defendant an opportunity to accept said logs, but offered and sold a part of the No. 1 logs to other parties, such act would be a breach of the contract on the part of the plaintiff, and he could not compel defendant to accept No. 2 logs as a fulfillment of the contract, and, if you so find, your verdict will be for defendant." The court modified this prayer by adding the following: "Provided you find that No. 1 and No. 2 logs, as to stave timber, is the same grade of timber as grades No. 1 and No. 2 of veneer and other such numbers of grades of timber." The instruction was given as thus modified. The appellant duly excepted to the ruling of the court in refusing to give the prayer as offered and in modifying same and giving it as modified. The jury returned a verdict in favor of the appellee in the sum of $750. Judgment was rendered in favor of appellee in that sum, from which is this appeal.

1. The statute of frauds provides that no contract for the sale of goods, wares and merchandise for the price of $30 or upward shall be binding on the parties, unless, first, there be some note or memorandum signed by the party to be charged; or, second, unless the purchaser shall accept a part of the goods so sold, and actually receive the same. Section 4864, C. & M. Digest. The alleged oral contract here was for the purchase and sale of timber over the value of $30. The principal question in this case, and the one that has given us greatest pause, is whether or not the appellee, on whom was the burden of proof, has adduced any testimony of a substantial character tending to prove that his alleged cause of action was not within the operation of this statute. We early announced the rule, which has not since been departed from, that "where something remains to be done as between vendor and vendee of personal property, for the purpose of ascertaining either quantity or price of the articles, there is no such delivery as passes the title." *Fagan* v. *Faulkner,* 5 Ark. 161.

In *Priest* v. *Hodges,* 90 Ark. 131, after reiterating the above doctrine, we said: "But if it clearly appears

that it was the intention of the parties that it should be deemed and considered that the property has been delivered, and the ownership of the property has been abandoned by the one and accepted by the other, and the title has actually passed, then such intention will govern, although there remains something to be done to determine the total quantity or value of the article.''

In *King & Clopton* v. *Johns,* 35 Ark. 190-197, we said: ''Where the minds of the parties have assented to the present purchase and sale of a specific chattel, which may be clearly identified and separated from other property, and the sale be dependent on no conditions nor contingencies, and such possession be given as the nature of the subject and the situation of the parties with regard thereto will permit of, and the vendor had done all that is required of him with respect to the property, the title will pass. And this will be so, notwithstanding something may be still necessary, on the part of the vendee, to ascertain the exact price.''

In *Jones* v. *Reynolds,* 120 N. Y. 213, it is held that, where there is any act from which it may be inferred that the seller has delivered and the buyer has actually taken possession of personal property, with the intention on the part of the seller to deliver and on the part of the buyer to accept and actually receive same, then the issue as to whether the oral contract of sale is taken out of the statute of frauds is one for the jury. This is the doctrine of the authorities generally. See *Becker* v. *Holm,* 89 Wis. 86; *Gray* v. *Davis,* 10 N. Y. 285. See also *Williams* v. *Evans,* 39 Mo. 206; *Pinkham* v. *Mattox,* 53 N. H. 605; *Bass* v. *Walsh,* 39 Mo. 192; *Burrows* v. *Whittaker,* 71 N. Y. 295; *Somers* v. *McLaughlin,* 57 Wis. 358; *Hinchman* v. *Lincoln,* 124 U. S. 38-48.

The converse is equally true, as shown by the above cases, that, where there are no acts from which it can be inferred that there was an intention to deliver a part or all of the property by the seller, and no intention to accept and actually receive a part or all of the property by

the buyer, then the court should declare, as a matter of law, that the alleged oral contract is within the statute of frauds, and void. Now, applying the law to the facts, we have reached the conclusion that it was an issue for the jury, first, to determine whether or not there was an oral contract between appellee and appellant for the sale of stave timber, as set up in the complaint, and, second, whether or not there was a complete delivery of the timber by the appellee to the appellant, and whether or not the appellant accepted and actually received the same so as to take the alleged oral contract, if made, out of the statute of frauds. There is ample testimony to sustain the finding that appellee and appellant entered into a contract by which appellee was to sell all of his stave logs or timber of the grades and at the prices specified in the complaint. While the testimony is meager, it nevertheless occurs to us that there was some substantial testimony which justified the court in sending to the jury the issue as to whether or not the appellant, by the acts of its agent, Massey, accepted and actually received the logs in controversy. There was testimony tending to prove that the appellee delivered the logs at the yards on the bank of the river, where the appellant's rafters could roll them into the river; that appellant actually received and paid for the elm logs—a part of the stave timber; that, through its agent, Massey, appellant, after they were so delivered, directed the manner of piling the logs so as to make them more readily accessible for scaling and rolling into the river; that Massey directed how the timber should be cut, and ordered binders for tying the particular logs in controversy together so they could be rafted.

These are facts from which the jury might have found that the appellant had actually received and accepted the timber in controversy. Without further discussing the evidence, it suffices to say that the issue on the statute of frauds was submitted to the jury under correct declarations of law, and there was testimony to sustain the verdict on this issue. Therefore the court did not err in refusing prayer for a peremptory instruction.

2.    There was no error in allowing appellee to amend his complaint, nor in refusing appellant's motion to continue the cause after such amendment. The amendment was not of such a nature as to change appellee's cause of action, and the appellant did not show any grounds of surprise which would entitle it to a continuance of the cause.    It did not show how it was prejudiced by the amendment. The matter, under the circumstances, was in the discretion of the court, and the court did not abuse its discretion. *Brown & Hackney* v. *Lovelace,* 152 Ark. 540; *Oakleaf Milling Co.* v. *Cooper,* 113 Ark. 83.

3.    We find no error prejudicial to the appellant in the rulings of the court in the admission of testimony.

4.    This brings us to the consideration of appellant's assignments of error in the rulings of the court in granting and refusing prayers for instructions.    The appellant contends that appellee's prayer for instruction No. 1 is erroneous because of the use of the terms "merchantable timber" and "stave timber."    This language did not render the instruction erroneous, under appellee's amended complaint and the facts which the testimony of the appellee tended to prove.    The amended complaint showed that appellee was suing for the value of certain stave logs of the price and grades mentioned, and his testimony tended to prove that this was merchantable stave timber.    Appellee was only contending for the value of stave logs that were merchantable, and there could be no possible prejudice to the appellant in confining the inquiry to logs of that character.    There was testimony tending to prove that stave logs of grades numbers one and two, of certain dimensions, constituted the only merchantable stave timber in "Shadden Bend," and that appellee had agreed to sell and appellant to buy all this timber; that the contract between appellee and appellant embraced all this stave timber, but did not include the timber suitable for veneer; that there was a distinction between the timber for veneer and the stave timber; that the veneer timber was of larger dimensions and of higher grade and price than the stave

timber.    There was testimony also tending to prove that
veneer timber would include number one stave timber.
There was testimony tending to prove that appellee sold
veneer timber, which would include No. 1 stave timber,
to another company, during the time covered by the
alleged contract with appellant.

   Now the trial court, in its instruction No. 1, given
at the instance of the appellee, and in instruction No. 6,
prayed for by the appellant, and modified and given as
modified, over appellant's objection, correctly declared
the law applicable to the facts which the testimony tended
to prove.    While the modification to appellant's prayer
for instruction No. 6 is not as clear, perhaps, as it should
have been, yet, when considered in connection with the
testimony, it could not have misled the jury.    The instruc-
tions, as a whole, are harmonious, and fully and fairly
submitted the issues of fact to the jury; and, since there
is substantial testimony to sustain the verdict, we cannot
disturb it.    *Duff* v. *Ayers,* 156 Ark. 17; *Franks* v. *Rogers,*
156 Ark. 120.

   There are no reversible errors in the rulings of the
trial court.    Its judgment is therefore affirmed.